HEATH and wife *against* WHITE.

An illegitimate child is capable of inheriting real estate from her mother.
*A.* being seised of land, had an illegitimate child, *C.*, and afterwards intermarried with *B.*, by whom she had a legitimate child, *D.* *A.* died in 1778, *B.* surviving her. *D.* went into possession of the land, and has ever since held adversely. *B.* died in 1815, *C.* being then, and ever since, a feme covert. In ejectment, brought by *C.* and her husband, in 1821, for a moiety of the land, it was held, that *B.* had an estate for life, as tenant by the curtesy; that *C.* had no right of entry until the death of *B.*; that *C.* therefore, was not barred of her right, by the adverse possession of *D.*, and the plaintiffs were entitled to recover.

This was an action of ejectment, commenced in 1821.

The case was as follows. The demanded premises were formerly the land of *John Ticknor*. Upon his death, it was, on the 27th of *June*, 1774, distributed to *Prudence Ticknor*, one of his children and heirs. She, before her marriage with *Jared Strong*, had two illegitimate children, *viz. Betsey Brace*, and *John Gardner*, who are both living. After her marriage, she had a legitimate child, *Samuel Strong*, who is living. She died

in 1778, thirty three years before the commencement of this suit, her husband, *Jared Strong*, surviving her. He died in *November*, 1815. Thirteen years before the commencement of this suit, *Betsey* intermarried with *David Heath;* and has ever since continued a feme covert. The land in question was sold, by the conservator of *Samuel Strong*, in pursuance of an order of the county court, on the 1st of *July*, 1800, to *John Ticknor*, under whom the defendant claims. The defendant, and those under whom he claims, have been in possession of the land ever since such sale, claiming title to the whole, and holding all others out. *Jared Strong* has not been in possession of the land since the death of *Prudence* his wife. The plaintiffs are *David Heath* and *Betsey*, his wife; who claim one undivided third part of the land.

A case, of which these are the material facts, was agreed to, by counsel, and reserved for the opinion of this Court.

*Church* and *J. W. Huntington*, for the plaintiffs, contended, 1. That a bastard, by the laws of this state, is capable of inheriting land from his mother. In support of this general proposition, they urged the following considerations.

First, the law of descents, in this state, is prescribed *by statute*, without reference to the common law of *England*. Nearly all the rules furnished by our statute, are directly at variance with the canons of the *English* common law ; and wherever there is a coincidence, it has the statute for its basis.

Secondly, the statute gives the estate to the "*children*" of the intestate. *Stat.* 207. *tit.* 32. *c.* 1. *s.* 30. The word *children*, not being a technical term, is to be understood in its ordinary acceptation. There is nothing in the statute, or in the nature of the subject, to limit the term to *legitimate* children. The mother of a bastard child has the same *affection* for it, that any other parent has for a legitimate child. She is under the same *moral obligation* to furnish it support and protection, that lies upon any other parent to support and protect a legitimate child. There is also the same *certainty* of the relation of parent and child, in one case, as in the other.

Thirdly, the fact that our statute has established rules of descent, in other cases, opposed to the common law of *England*, and in conformity with the civil law, affords a positive argument in favour of a succession, in this case, according to the civil law ; by which a bastard was capable of succeeding to the

*Litchfield,*
*June,*
*1824.*

*Heath*
*v.*
*White.*

whole of his mother's estate. 2 *Bla. Comm.* 247, 8. *Cooper's Justin.* 265. n.

Fourthly, the maxim of the *English* common law, that a bastard has *no inheritable blood*, is of feudal origin, and governed by feudal reasons, at all times inapplicable to our condition. The maxim has never been adopted, by our legislature, or by our courts. On the contrary, it has been decided, that illegitimate children of the same mother, may be heirs to each other. *Brown* v. *Dye*, 2 *Root* 280. On a similar principle, it has been decided, that a bastard may derive a settlement from his mother. *Canaan* v. *Salisbury*, 1 *Root* 155.

Fifthly, even in *England*, bastards are considered as children, for every purpose, except that of succession. The rule that a bastard is *nullius filius*, applies only to the case of inheritances. Per *Buller*, J. 1 *Term Rep.* 101. Bastards may take as children of the mother, under a devise. *Com. Dig. tit.* Bastard. E. cites *Mo.* 10. They are punishable for incest; a crime, which they could not commit, if they had no relations. 1 *Bla. Comm.* 459. *The Queen* v. *Chafin*, 3 *Salk.* 66. They must have the consent of the putative father, guardian or mother, under the statute 26 *Geo.* 2. *c.* 33. *The King* v. *Hodnett*, 1 *Term Rep.* 96. *The King* v. *Edmonton*, cited 1 *Term Rep.* 97.

2. That the plaintiffs' right of entry was not barred, by the statute of limitations. This depends on the question, when did such right of entry first accrue ; as the statute never runs against a person who has no right of entry. The right or title of *Betsey Brace*, now *Betsey Heath*, first accrued, when *Jared Strong's* tenancy by the curtesy determined. This was at his death in 1815. She was then, and ever since has been, a feme covert. She was under a disability, within the saving of the statute, when her title first accrued, and the same disability still remains. Her children will have five years for making entry after her death, or the removal of her disability, but no longer, though under disabilities themselves. *Griswold* v. *Butler* & ux. 3 *Conn. Rep.* 227. *Jackson* d. *Hardenbergh* & al. v. *Schoonmaker*, 4 *Johns. Rep.* 390. *Doe* d. *Cook & ux.* v. *Danvers*, 7 *East* 299. *Clark* v. *Vaughan*, 3 *Conn. Rep.* 191.

It may be objected, that *Jared Strong* was never in possession. But, in this state, actual seisin is not necessary to transmit a title. *Hillhouse* v. *Chester*, 3 *Day* 166. Besides, *Betsey Heath* does not claim under *Jared Strong*. Whether he enjoyed his rights as tenant by the curtesy, could make no difference as to her right of entry. It is sufficient, that a particular estate exist-

ed ; and her right did not commence until *that* was determined.

*Benedict* and *A. Sterling*, for the defendant, contended, 1. That *Betsey Heath*, being a bastard, was incapable of inheriting the land in question.

First, it is an indisputable rule of the *English* common law, that a bastard cannot inherit from his mother ; not because his mother is uncertain, but because he has no inheritable blood. 1 *Bla. Comm.* 458. 2 *Bla. Comm*, 247, 8. The rule is fortified by principles of policy, whose object it is, to secure domestic tranquility, and to discourage illicit commerce between the sexes. *Reeve's Dom. Rel.* 274, 5.

Secondly, by our statute, the estate goes to the " *children*" of the intestate. But the term children, in any law, means such as are *lawfully* begotten. *A fortiori*, it must have this meaning in a statute of *descents* ; it being presumable, that the legislature used the term in the sense attached to it, by the common law, in relation to the same subject. *Thornton's* case, *Dyer* 345. *a.* Co. *Litt.* 123. *b.* 2 *Rol. Abr.* 785. *Pow. Dev.* 319. 339. *Jac. Law Dict. tit.* Children.

Thirdly, this is, and immemorially has been, the received construction in this state ; and is sanctioned, by the opinions of our most eminent jurists. *Reeve's Dom. Rel.* 274. 1 *Swift's Dig.* 47.

2. That the defendant had gained title, by the adverse possession of himself, and those under whom he claims, for more than fifteen years. The plaintiffs claim, that *Jared Strong* had an estate, as tenant by the curtesy, which prevented the operation of the statute. But, he could not have curtesy in the land of a bastard, whom he was not bound to support. 1 *Swift's Dig.* 84. 2 *Bla Comm.* 126.

Again, the statute commenced running in the life-time of *Jared Strong* ; and the suit was not commenced until more than five years had elapsed after his death. *Bunce* & al. v. *Wolcott*, 2 *Conn. Rep.* 27. 1 *Swift's Dig.* 163, 4. *Doe* d. *George &* ux. v. *Jesson*, 6 *East* 80. *Griswold* v. *Butler* & ux. 3 *Conn. Rep.* 227. 240. The subsequent intermarriage of the plaintiffs cannot vary the defendant's rights, as no-supervenient disabilities are allowed. *Griswold* v. *Butler* & ux. 3 *Conn Rep.* 227. *Rogers* v. *Hillhouse*, 3 *Conn. Rep.* 398.

HOSMER, Ch. J. The plaintiffs, in right of the wife, have brought an action of disseisin to recover certain land ; and two

questions have been raised for the determination of the court. The first of them respects the plaintiffs' title; and the second opposes a recovery, on the ground of the statute of limitations.

1. The property in question, was formerly vested in *Prudence Ticknor*; and the wife of the plaintiff, in right of whom the premises are claimed, is the illegitimate child of the said *Prudence.* Whether an illegitimate child can inherit land from her mother, is the precise question to be decided.

It must be admitted, that all rules of succession to estates are creatures of the civil polity, and *juris positivi* merely. 2 *Bla. Comm.* 211. This principle, however, affords no aid, in the determination of the question before the court. It cannot be denied, that the legislature have authority to prescribe any rule of succession; and it is equally clear, that in all countries, both civilized and savage, the children, under certain modifications, inherit the property of their parents. The duty of parents to provide for the children, is a principle of natural law, enforced by the municipal laws of all well regulated states, but more effectually by Providence, who has implanted in the breast of every parent a degree of affection for his child, which neither deformity, wickedness nor ingratitude can entirely extinguish. In this state, at the death of *Prudence*, the ancestor, the property of an intestate was, by express law, made to descend " to and among *the children*, and such as legally represent them." On the right construction of the recited expression, the controversy entirely depends. That *Betsey Heath*, one of the defendants, is the child of her mother *Prudence*, is so intuitively certain, that it neither requires, nor admits, of other proof. Unless the words of the law are *restrained*, and not permitted to mean what they literally declare, they definitely settle the question between the parties.

It is, first, advanced by the defendant, to abridge the usual meaning of the words of the statute, that the *English* common law, in reference to the subject of succession, has restrained the term *child*, to one who is born within lawful matrimony. This is, undoubtedly, true. By that law, the rights of an illegitimate child are very few, being only such as he can acquire; he being regarded as the son of nobody. 1 *Bla. Comm.* 458. It is not the meaning of the word *child* or *children*, that prevents a bastard from inheriting his mother's estate; but persons of this description are not by law permitted to succeed to their parent. That an illegitimate daughter has been legally recognized as be

ing the child of her mother, is proved by the case of *The King* v. *Edmonton*, cited 1 *Term Rep.* 97.; and the law takes notice of the connexion, by prohibiting the formation of an incestuous union by marriage. Undoubtedly, in *England*, and in those states, which have adopted, on the subject of descents, in respect of illegitimates, the same law, the term *child*, in reference to a succession by inheritance, always means a legitimate child. The subject matter abridges the customary meaning of the word : as the term *provisions* in a statute of *Edward* III. made to repress the usurpations of the papal see, was, by a peculiar signification, restrained to the nomination to benefices by the pope. The position, then, to be established, by the defendant, is not relative to the proper meaning of the word *children ;* for as to this there exists no possible controversy. But it is, precisely, whether the *English* law relative to succession by illegitimates, is to be recognized as the law of this state ; and then the term *child* or *children* must, of course, be construed pursuant to this subject matter. The court cannot, *ad libitum*, adopt the law in question ; but they must first see, that on the usual principles of construction, it is a branch of the law of this country. Now, the opposite of this is irresitibly apparent. The *English* law of descents has never been admitted in this state ; but from the earliest period, so far as I am informed, the subject of succession has been regulated by a law peculiarly our own. Our statute bears a striking analogy to the 22 and 23 *Car.* 2. *c.* 10. relative to the distribution of personal estate ; ( 3 *Bac. Abr.* 72. *Gwil.* ed.) and likewise to the civil law, by which an illegitimate was permitted to inherit the estate of his mother ; the mother being sufficiently certain, though the father was not. *Cod.* 6. 57. 5. Were I to be governed by the source from which our statute derived its origin, and from the reprobation of the *English* law of descents, I should hence deduce an argument in favour of the customary meaning of the word *children ;* but I place no stress on this ground. Sufficient it is, that the *English* law of descents, being no part of the law of this state, furnishes no subject matter to restrain the signification of the term in question. The laws of the neighbouring states, which limit descents to " *the lawful issue*" of the intestate, have no bearing on the subject of discussion. It is a conclusive answer to the argument from this source, that our law does *not* restrain succession to the *lawful issue.*

It has been insisted, that on principles of policy, to secure domestic tranquility, and to discourage illicit commerce between

the sexes, the law inhibiting a bastard from inheriting, was originally introduced. That it may, in some degree, produce these effects, I am not disposed to deny; but were it worth the trouble of a discussion, it would not be difficult to shew, that this was not the ground, on which the rule of exclusion originated. Let it, however, be admitted; and what is the argument? That on the basis of policy, this court may restrain the plain words of a legislative act. If this rule were ever adopted and applied, it certainly must be in a case imperiously cogent, which could not leave a *scintilla* of doubt on the mind relative to the intention of the legislature. I do not see the present subject in this light; and am not prepared to march abreast of the plain words of the law. With the late Ch. J. *Swift* I most cordially concur, that "where the meaning of the statute is plain and evident, we must construe it according to the words; and it never can be admitted, to give a construction to a statute different from the import of the words, from a conjecture that the legislature had a different meaning. Such a power would enable a court to make what they pleased of a statute." *Curtis* v. *Hurlburt*, 2 *Conn. Rep.* 315.

It was determined, nearly thirty years since, by the superior court, in *Brown* v. *Dye*, 2 *Root* 280. that natural children by the same mother, are heirs of each other. The question now under discussion was directly decided, in the case above cited. *Fish Brown*, the bastard son of one *Thankful Holdridge*, died, leaving an estate in land, and an illegitimate sister by the same mother. The title to the premises was adjudged to be in this sister of the half blood; and on a consideration of the precise objection made in this case. By the court it was said, "the common law of *England*, which has been urged in this case, is not to be mentioned as an authority, in opposition to the positive laws of our own state; and nothing can be more unjust, than that the innocent offspring should be punished for the crimes of their parents, by being deprived of their right of inheriting by the mother, when there doth not exist among men a relation so near and certain as that of mother and child." Until this case is over-ruled, it must be deemed conclusive on the point of controversy in question.

That a bastard child is settled with her mother, was adjudged, in *Canaan* v. *Salisbury*, 1 *Root* 155. and is unquestionable law. "This," said the court, in the case just cited, "is agreeable to the law of nature and reason." It is because there subsists between them a consanguinity, which the law recognizes; that is,

the relation of mother and child.    This case bears on the principal point in question, with a most obvious and decisive analogy.

*Litchfield*,
June,
1824.

Heath
*v.*
White.

I entertain no doubt, that, on the same principle, in the event of the mother's impotency, her bastard child is compellible, under the statute, (*p.* 369.) if of sufficient ability, to provide for her support.    The one is a parent ; the other her offspring ; and the case is embraced, by the reason as well as by the words, of the law.    The principle, in my judgment, ought to be extended to every analogous case ; but *the reputed father* does not fall within the analogy.    There is no possibility of deciding who is the father of a child begotten on a lewd woman.    Her testimony is permitted to rise so high in the scale of probability as to subject him to a contribution towards the child's maintenance, not as the father in fact, but the *putative* father only.

On the whole, I embrace the plain meaning of the words of the statute, confirmed by a determination in point, and decisions decisively analogous.    I cannot admit any influence on my opinion from the common law of *England*, which never has been adopted here ; nor from arguments of political expediency, furnishing a better ground for the legislature to recur to, than for those whose province it is *jus dicere, non dare.*

2. The next and only remaining question, is, whether the plaintiffs are barred, by the law of limitation.

The solution of this enquiry depends on the extent of title, which the tenant by the curtesy had in the premises.    It is insisted, by the defendant, that his right is precisely co-extensive with that of his son *Samuel Strong*, the issue of his wife *Prudence ;* and on this principle, that tenure by the curtesy originated from the father's obligation to support his child, and therefore must be commensurate with it.    Let it be admitted, that an estate by the curtesy primarily came into existence, on the reason above-mentioned, which Sir *William Blackstone* seems to suppose ; (2 *Bla. Comm.* 128.) yet it is far from a legitimate conclusion, that the extent of the tenant's interest, is to be measured by the reason for its introduction.    The law concerning infancy originated from the supposed imbecility of an infant's understanding, and the presumed necessity of affording him protection ; notwithstanding this, the contract of a youth of twenty years of age, of much learning and extraordinary soundness of mind, is as invalid, as if he were only of half that age, and below the common standard for talents and acquirements. The system of tenure by the curtesy, is, at least, pretty artificial,

*Litchfield,*
*June,*
*1824.*

Heath
*v.*
White.

and what it is, because *ita lex scripta est.* For, " whether the issue were born *before* or *after* the wife's seisin of the lands ; whether it be living or dead, at the time of the seisin, or at the time of the wife's decease ; the husband will be tenant by the curtesy." 2 *Bla. Comm.* 128. *Co. Litt.* 29. *b.* *Bush* & ux. v. *Bradley,* 4 *Day* 298. Now, if the estate by curtesy is founded, as Ch. J. *Swift* supposes, (1 *Swift's Dig.* 84.) on the ground that the tenant is the natural guardian of the children, whose birth gives him title, and that it is proper he should have the use of the land, to support and educate them, it is decisively clear, that the reason operates in originating only, but not in bounding or limiting the interest; otherwise, the death of the children would necessarily infer a termination of the estate.

The description of the issue born, who gives rise to the tenancy by the curtesy, is, that he shall be capable of inheriting the estate. *Litt. sect.* 35. 52. 2 *Bla. Comm.* 126. Was not *Samuel Strong* capable of inheriting the estate in question ? Unquestionably, he had this capacity, and, in fact, did inherit it. He is seised *per my et per tout* with his fellow tenants in common ; and has right to every blade of grass, and every atom of the soil. I admit, there would arise a powerful objection, if the reason on which the law of curtesy originated, controuled the estate of the tenant; but that it does not, has already been demonstrated.

Be the above argument what it may, the law is unquestionable, that the actual inheritance of the issue is not of moment, but his *capacity* to inherit. His capacity is not affected, by the fact, that others have an equal capacity. If *Samuel* had died without issue, before his mother, his father, this notwithstanding, would have been tenant by the curtesy; but the fee of the estate would have vested entirely in *Betsey Heath* and her brother. If a man marry a widow, who had issue, and afterwards has a son by her, would he be tenant by the curtesy of all her estate, or of a part only, including the interest of his son, and thus become a tenant in common with the other children ? He would have curtesy in the whole; and on this ground, that this is the established law relative to this estate.

From the above principles, it results, that *Betsey Heath* had no right of entry in the land demanded, until the year 1815, on the death of *Jared Strong* ; and that the plaintiffs are not barred by the law of limitation. *Clark* v. *Vaughan,* 3 *Conn. Rep.* 191.

On these grounds I am of opinion, that the plaintiffs are entitled to recover.

PETERS and BRAINARD, Js. were of the same opinion.

BRISTOL, J. dissented, considering a bastard as incapable of taking by descent, even from his mother.

Judgment to be rendered for plaintiffs.