MARY E. B. EMERY *vs.* SAMUEL W. EMERY & others.

Suffolk.   December 5, 1913. — June 15, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Domicil.   Probate Court,* Jurisdiction.

Where a man who theretofore had had his domicil in a city in another State, declared his purpose to give up his residence there and establish his home in a city in this Commonwealth and this declared intention was manifested by unequivocal acts both as to the relinquishment of his former residence and the acquisition of the new one, the fact that he retained a large dwelling house and fourteen acres of land in the city of his former residence in the other State, which he was unable to dispose of in spite of his efforts to do so, and that during two winters his wife kept this house open although she often was with her husband in this Commonwealth, and the fact that while dwelling in this Commonwealth he lived in a hired house or in an apartment hotel until his death here, are not inconsistent with a finding that his domicil at the time of his death was in the county in this Commonwealth in which he lived, and accordingly it may be found that the Probate Court of that county has jurisdiction of a petition for the proof of his will.

PETITION, filed in the Probate Court for the County of Suffolk on December 10, 1912, for the proof of the will of Samuel W. Emery, who died on November 29, 1912, and whose residence at the time of his death was alleged to have been Boston.

A decree was made by *Grant,* J., allowing the will.  A son and two daughters of the alleged testator appealed from the decree. They also filed a paper called a "plea and motion," in which it was alleged that the domicil of Samuel W. Emery at the time of his death was not at Boston but was at Portsmouth in the State of New Hampshire and it was prayed that the decree of the Probate Court admitting his alleged will to probate should be set aside and that the petition for the proof of such alleged will should be dismissed.

The case was heard by *Rugg,* C. J., upon the "plea and motion" of the appellants mentioned above.  The Chief Justice made a memorandum of findings, including the facts stated in the opinion. He found that Samuel W. Emery was at the time of his death an inhabitant of or resident in the county of Suffolk within the mean-

ing of R. L. c. 162, § 3, and that therefore the petition properly was filed in the Probate Court for that county. He made an interlocutory decree denying the plea and motion. The appellants appealed; and the Chief Justice reported the questions of law raised by the appeal from the interlocutory decree for determination by the full court, it being agreed that the findings of fact made by him should be accepted without a report of the evidence.

The case was argued at the bar in December, 1913, before *Rugg,* C. J., *Loring, Braley, & De Courcy,* JJ., and afterwards was submitted on briefs to all the justices.

*S. W. Emery* of New Hampshire, (*J. P. Richardson* with him,) for the appellants.

*E. C. Stone,* for the appellee.

DE COURCY, J. This case is before us on a report after an appeal from the interlocutory decree denying the "plea and motion;" it being agreed that the findings of fact made by the Chief Justice should be accepted without a report of the evidence. The only question raised is whether the correct inference to be drawn from the facts found is that the domicil of Samuel W. Emery at the time of his decease was in Suffolk County in this Commonwealth, where his will was filed for probate. R. L. c. 162, § 3. *Harvard College* v *Gore,* 5 Pick. 370. *Shaw* v. *Shaw,* 98 Mass. 158. And under the terms of the report we stand where the Chief Justice stood in drawing the inference of residence from the facts. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138.

Previous to January, 1905, the domicil of Samuel W. Emery was in Portsmouth in the State of New Hampshire. He was a trial lawyer of distinction, had been county attorney and city solicitor, and was then judge of the municipal court. It is found as a fact, and is not disputed by the appellants, that Mr. Emery in 1905 formed a fixed and *bona fide* intent and purpose to give up his domicil in New Hampshire and to acquire one in Massachusetts, and that this intent continued constant until his death in November, 1912. This purpose was manifested not only by statements made publicly and privately that he had given up Portsmouth permanently and proposed to remove his practice and residence to Massachusetts, but by significant acts such as his resignation as judge of the municipal court of Portsmouth and as member of the New Hampshire Bar Association. In short, he appears to have

done everything that reasonably could be expected in carrying out his purpose to sever his connection with his domicil of origin. The fact that he retained his large house with its fourteen acres of land was due to his inability to dispose of such a property, notwithstanding his many efforts to do so.

As already said, it is undisputed that Mr. Emery had a clear and honest purpose to establish his legal domicil here. With that intent the fact of residence must concur. But, as was said by Knowlton, C. J., in *Barron* v. *Boston*, 187 Mass. 168, 170, "The only act, apart from the intention of the actor, which is absolutely necessary to the acquisition of a domicil in a city or town, is that at some time the person must go to the place and take up his abode there. If he is abiding there while his domicil is elsewhere, and if while so abiding he forms an intention immediately to make it his home permanently or for an indefinite period, and continues to abide there in pursuance of that purpose, he thereby acquires a new domicil." The record discloses facts which show decisively that Mr. Emery carried into actual execution his intention to acquire a domicil here. He transferred his law office from Portsmouth to Boston. He was admitted to the bar of this Commonwealth, and was appointed a justice of the peace in Massachusetts; and in both applications he described himself as of Boston. By his direction he was designated as Samuel W. Emery of Massachusetts in the reports of cases thereafter argued by him before the New Hampshire Supreme Court. In numerous written instruments, including a mortgage of his house in Portsmouth and leases of his offices, he described himself as of Boston; and always so registered at hotels. His political and municipal rights and duties were located here, where he paid his poll taxes and exercised the elective franchise. As to his place of abode, it appears that from the time when Mr. Emery moved to Boston in 1905 he always lived here except during the summer season of each year. When he first came, he and his wife spent much time in Boston and its neighborhood looking for a suitable house. Failing to find one that satisfied her, he hired a room at a hotel for a time, and thereafter usually occupied apartments comprising several rooms, which he leased by the year. A furnished house was rented in October, 1907, and occupied until the following May. Ordinarily his family was with him, except in the spring of 1912, when

Mrs. Emery visited her sister in the south, and in the two winters of 1908–09 and 1910–11, when she kept open the Portsmouth house but often was with her husband in Boston. While the facts with reference to the occupation of the Portsmouth house, if considered alone and unexplained, might render it at times somewhat uncertain and equivocal which of the two places of residence was his legal domicil, the other facts clearly indicate that he carried out his admitted honest purpose to establish his real home in Boston; and all the facts are consistent with this constant intent on his part. It seems probable that his failure to purchase a house in Boston was due largely to his inability to sell the Portsmouth property. However that may be, it is immaterial that while here his residence was in a hired house or in an apartment hotel. As was said by Chitty, J., in *In re Craignish*, [1892] 3 Ch. 180, 192, "Living in lodgings and changing the lodgings from time to time are circumstances to be taken into consideration on a question of domicil; they are not inconsistent with domicil." *Wilton* v. *Falmouth*, 15 Maine, 479. *Ames* v. *Duryea*, 6 Lans. 155. *Guier* v. *O'Daniel*, 1 Binn. 349, note. And the change of domicil was complete notwithstanding that at times he allowed his family to remain temporarily in his former home until he could conveniently remove them to his fixed permanent residence. *Cambridge* v. *Charlestown*, 13 Mass. 501. *McDaniel* v. *King*, 5 Cush. 469, 474. *Blair* v. *Western Female Seminary*, 3 Fed. Cas. 1486, and see *Cochrane* v. *Boston*, 4 Allen, 177.

We are of opinion that the domicil of Mr. Emery at the time of his decease was in Suffolk County, and that the courts of this Commonwealth have jurisdiction of the petition for the probate of his last will. Accordingly the interlocutory decree denying the plea and motion is to be affirmed.

*So ordered.*