ROSELLA GARDNER *vs.* SADIE E. GARDNER & others.

Hampden.   December 30, 1918. — February 27, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Domicil. Marriage and Divorce. Legitimacy. Words,* "Good faith."

Under R. L. c. 151, § 10, which provides that, "A marriage shall be void in this Commonwealth if the parties, both being resident here and intending to return and reside here, in order to evade any of the provisions of the first five sections of this chapter go into another State or country and there have their marriage solemnized, and return and reside here," if one of the parties to such marriage is innocent of any such intent and the other party alone entertains this vicious purpose, the marriage is not made void by this section.

A girl living in Pennsylvania married a man who gave an assumed name. Later he revealed to her his true name and told her to go home to her father and wait until he sent for her to come to him at his home in this Commonwealth, where

he would remarry her under his true name. She went home and afterwards the man sent for her and she came to him in this Commonwealth. He then for the first time told her of his marriage to another woman but stated that he had just obtained a divorce. This was not true, the truth being that his wife had obtained a divorce *nisi* against him. Before the divorce obtained by his wife had become absolute, he took the girl to the State of New York and there was married to her under his right name. In the marriage certificate her residence was given at a town in Pennsylvania. She made no inquiries about the divorce but took the man's word for it. She knew that she could not be remarried in Massachusetts without a license and that a license could not be obtained there without her parents' consent, because she was under age, and she was afraid to tell her father that her first marriage had been under an assumed name until after the second ceremony had been performed. She therefore went to New York State for the second marriage, as she had done for the first, because no license was required there. Thereafter they lived in this Commonwealth, where four children were born to them. The man bought certain real estate in this Commonwealth, where they lived. Then he died intestate. He left a son by his divorced wife, who conveyed his interest in the real estate to his mother, and she brought a petition in the Land Court for registration of her title to this real estate as its sole owner claiming under her son as the only heir of the intestate. The woman with whom the intestate lived as his wife at the time of his death appeared as respondent in behalf of herself as widow of the intestate and as guardian of his four children by her. The judge of the Land Court found that at the time of the remarriage of the intestate and the respondent they both were residents of this Commonwealth and that they did not (because she did not) violate R. L. c. 151, § 10, by going into the State of New York to be married in order to evade any of the provisions of the first five sections of that chapter. He found that the respondent "entered upon the second marriage contract in good faith and in the full belief that the former marriage had been annulled by a divorce," and found that under R. L. c. 151, § 6, this marriage became valid and the issue thereof legitimate, and ordered that the petition be dismissed. *Held,* that the findings of the judge were warranted, and that the petition was dismissed rightly.

In R. L. c. 151, § 6, the words "good faith" are used in their ordinary meaning and, where the circumstances were such that they well might have put a shrewd woman on her guard and where a woman more worldly wise and of greater intelligence than the one deceived could not have failed to be conscious of some degree of moral delinquency in entering into the contract of marriage, such circumstances do not require necessarily a conclusion that the woman was not acting in good faith.

PETITION, filed in the Land Court on September 12, 1917, by Rosella Gardner, the grantee under a deed from Raymond H. Gardner, dated August 22, 1916, for the registration of the petitioner's title in fee simple to a certain parcel of land with the buildings thereon in Springfield, which was the property of Horace S. Gardner, who died intestate on January 21, 1915, leaving as his alleged sole heir at law Raymond H. Gardner, the petitioner's grantor.

The answer of the respondent Sadie E. Gardner of Springfield alleged that she was the widow of Horace S. Gardner and that the respondents Howard J. Gardner, Maud M. Gardner, Gordon P. Gardner and Norman H. Gardner were their children, of whom she was the guardian. "Wherefore, the said Sadie E. Gardner objects to the granting of the said petition and claims her statutory share in the said property as the surviving widow of the said Horace S. Gardner and on behalf of her said children claims for them their statutory share and further asserts that said petitioner has no right whatsoever to any share therein."

The case was heard by *Davis*, J., who made the findings that are stated in the opinion. In regard to the good faith of the respondent Sadie E. Gardner in entering into her remarriage with Horace S. Gardner the judge said, "Unless her good faith and her full belief must be affected by facts that she could readily have ascertained, or by what she must be presumed to have known as to the law, I find that she entered upon the second marriage contract in good faith and in the full belief that the former marriage had been annulled by a divorce. I rule that her good faith and belief were not impugned by circumstances which might have put a person of prudence upon inquiry."

The judge found "that the marriage between Horace and the respondent Sadie was validated, and the issue thereof legitimated, under the provisions of R. L. c. 151, § 6. . . . In consequence the petitioner does not show title proper for registration, and there must be an entry of petition dismissed. So ordered."

The petitioner appealed.

R. L. c. 151, § 6, is as follows: "If a person, during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract with due legal ceremony and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, that the former marriage had been annulled by divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married

from and after the removal of such impediment, and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents."

Section 10 of the same chapter is as follows: "A marriage shall be void in this Commonwealth if the parties, both being resident here and intending to return and reside here, in order to evade any of the provisions of the first five sections of this chapter go into another State or country and there have their marriage solemnized, and return and reside here."

Section 4 of that chapter is as follows: "A marriage contracted while either party thereto has a former wife or husband living, except as provided in section six and in chapter one hundred and fifty-two [relating to divorce], shall be void."

The case was submitted on briefs.

*W. A. Thibodeau, G. L. Ellsworth & A. E. Yont,* for the petitioner.
*E. Y. Van Winkle & C. L. Young,* for the respondents.

RUGG, C. J. This is a petition for the registration of the title to land. The question of title turns upon the validity of the marriage of the respondent with Horace S. Gardner, who died in 1915, intestate, seised of the locus. The petitioner was married to the deceased in 1893, but because of his desertion procured a divorce *nisi* from him on January 16, 1901, which became absolute six months later. In the meantime, in November, 1900, the deceased under an assumed name went through a marriage ceremony in New York with the respondent, then an eighteen year old school girl living at home in Pennsylvania. In the following April, revealing to her his real name, he told her to go home to her father and wait until he sent for her to come to his home in North Adams in this Commonwealth, where he was going on business, and would remarry her under his proper name. He then went to his father's home and brought in Berkshire County a libel for divorce against the petitioner. The petitioner, although served with process, paid no attention to it because she had already procured a divorce herself. The deceased then sent for the respondent, who came to his father's house in North Adams, where he for the first time told her of his marriage to the petitioner, but stated that he had just obtained a divorce. On July 8, 1901, the deceased under his right name obtained a decree *nisi* for a divorce from the petitioner. On July 15, 1901, one day before the petitioner's decree *nisi* became

absolute, the deceased took the respondent to Hoosac Falls in New York and there was married to her under his right name. In the certificate of this marriage his residence was described as North Adams, Massachusetts, and her residence as Scranton, Pennsylvania where she was born although she had not lived there for several years before her first marriage ceremony. This certificate also described her status as "married" but that this was the first marriage of either party. The judge of the Land Court further found that "She also knew that he had lived with still another woman, and that there was a child by her. She made no inquiries whatever in regard to his divorce, but took his word about it. She knew that she could not be remarried in Massachusetts without a license, and that a license could not be obtained without her parents' consent, because she was still under age. She was afraid to tell her father that her first marriage had been under an assumed name until after the second ceremony had been performed. She therefore went to New York State for the second marriage as she had done for the first, because no license was required there." Thereafter they lived in this Commonwealth, where four children were born to them, and the deceased bought the locus. When he died the deceased left the petitioner and one son by her, (who has conveyed to her his interest in the locus,) and the respondent and her four children.

The finding of the Land Court is that at the time of the remarriage in July, 1901, both the deceased and the respondent were residents of this Commonwealth. The facts set forth in the finding justify this inference. Intention always is an important factor in determining domicil. *Whately* v. *Hatfield,* 196 Mass. 393. *Emery* v. *Emery,* 218 Mass. 227. There are not enough facts in this record to require a reversal upon this point.

The pivotal question is whether, in entering into the marriage of July, 1901, both parties, being resident in this Commonwealth and intending to return here to live, went to New York to have their marriage solemnized with an intent to evade any of the provisions of the first five sections of R. L. c. 151, contrary to § 10 of that chapter. If they went to New York, both knowing of the impediment to their marriage in this Commonwealth and with a purpose to avoid the force of the laws of this Commonwealth and to return here to live, then that marriage would be void here.

*Tyler* v. *Tyler*, 170 Mass. 150.  *Ewald* v. *Ewald*, 219 Mass. 111. If, however, one of them was innocent of any such intent and one alone entertained this vicious purpose, then the inhibition of § 10 does not apply.  *Whippen* v. *Whippen*, 171 Mass. 560.  The good faith of a party to such a marriage ceremony is a fact.  In reaching a conclusion, the point to be ascertained is whether there is actual honesty of purpose.  The words "good faith" in R. L. c. 151, § 6, have no technical or refined meaning but are used in their ordinary signification.  They do not require insight into circumstances calculated to arouse suspicion or to put sagacious persons on inquiry. They do not denote the standard of knowledge of the person of ordinary prudence.  A stupid person, who is free from any culpable design and acting with genuine integrity, may enter into a marriage in good faith, when a more worldly wise person of greater intelligence could not fail to be conscious of some degree of moral delinquency.  The circumstances in the case at bar might well have put a shrewd woman on her guard.  But they are not so clear as to require the conclusion that the respondent did not act in good faith.  *Lufkin* v. *Lufkin*, 182 Mass. 476.  *Minot* v. *Burroughs*, 223 Mass. 595, 604.

The respondent's ignorance of the law and action upon that ignorance, while it would not protect her from the consequences if that were the only matter involved, does not make imperative a finding that she did not at the same time conduct herself with good faith.  The purpose of the statute is to provide against illegitimacy of offspring and to protect the public interests.  It is designed in part to avert the stigma of illegitimacy from innocent children when one parent is blameless of any conscious transgression of the laws regulating marriage.  *Turner* v. *Turner*, 189 Mass. 373. *Green* v. *Kelley*, 228 Mass. 602.  The determination of the question, whether the respondent went from North Adams to Hoosac Falls to be married and returned to live in North Adams in good faith without any purpose to circumvent our marriage laws and honestly thinking that she might do so legally, well might have depended in large degree upon her appearance and manner of testifying.  The decision of the judge of the Land Court in her favor on this point cannot be pronounced erroneous in law.

*Order of Land Court denying registration affirmed.*