## Jones v. Jones

210

*Paul A. McGinley*, for plaintiff.

Koch, J., January 26, 1959.—Plaintiff, Meryle S. Jones, seeks a decree annulling her marriage to defendant, Hughie G. Jones. The proceeding is uncontested. The complaint, which was filed on September 18, 1958, avers that she and defendant were married by a clergyman at Elkton, Md., on July 10, 1954.

The master and examiner, who recommended that a decree of annulment be entered, found from the testimony that Hughie G. Jones was previously married on June 1, 1950, at Blackstone, Va., and that this marriage was dissolved by this court as of no. 13, September Term, 1953, the decree having been entered on September 27, 1954. Hughie G. Jones was plaintiff in that action.

The testimony of plaintiff in the case at bar indicates that she had been told by defendant that his previous marriage was dissolved and consequently there can be no doubt that she contracted her marriage in good faith. The record reveals that the master and examiner questioned plaintiff as follows:

"Q. When did you first find out that your husband was married at the time of your marriage to him?

"A. It was a few weeks after we had been married that I found out.

"Q. So then you were cognizant of the fact that in August he had another hearing in divorce and that

subsequently, on September twenty-seventh, his decree came down?

"A. Yes.

"Q. And you continued to live with him after that?

"A. Yes.

Other testimony demonstrates that plaintiff resided with defendant until September 1958, when she left the common domicile.

We are of the opinion that on the basis of the facts before us it is necessary to apply The Marriage Law of August 22, 1953, P. L. 1344, sec. 17, 48 PS §1-17. This provision of The Marriage Law is as follows:

"If a person, during the lifetime of a husband or wife with whom a marriage is in force, enters into a subsequent marriage pursuant to the requirements of this act, and the parties thereto live together thereafter as husband and wife, and such subsequent marriage was entered into by one or both of the parties in good faith in the full belief that the former husband or wife was dead, or that the former marriage has been annulled or terminated by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by death of the other party to the former marriage, or by annulment or divorce, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and immediately after the removal of such impediment."

The only problem which might arise in the application of this statute is that portion which refers to the subsequent marriage having been entered into "pursuant to the requirements" of The Marriage Law. The marriage in this case was consummated in the State of Maryland, but we nevertheless are of the opinion that the act is applicable. Our research has failed to disclose a decision in which this or any other provision

of section 17 of The Marriage Law of 1953 has been interpreted. However, we note that Freedman in vol. 1, §63, at page 146, of his scholarly "Law of Marriage and Divorce" concludes that the statutory provision is an adequate expression of public policy which would find judicial acceptance in cases of common law marriage. We agree with this observation and in our view it would follow that a ceremonial marriage in another jurisdiction would fall within this statute, the title of which is as follows: *"Relating to marriage;* and amending, revising, consolidating and changing the law relating thereto." (Italics supplied.)

We have, then, the situation that plaintiff continued to live with defendant for approximately four years in good faith after the removal of the impediment and the only conclusion which can be reached is that the parties were legally married and it follows that we have no power to enter a decree of annulment. If this is to be dissolved, plaintiff should proceed with an action in divorce if the facts of the marital relationship warrant such action.

This is a case where the above legislation is clearly applicable and since additional testimony would be of no avail to plaintiff, we are obliged to reject the master's recommendation and permit plaintiff to amend her complaint to include an appropriate ground for divorce and the customary prayer. We deem this to be proper practice under Pa. R. C. P. 1127, which provides for pleading more than one cause of action and alternative pleading in divorce. The significance of this rule was thoroughly discussed by our learned colleague, President Judge Henninger, in Ondria v. Ondria, 12 D. & C. 2d 185.

### Order

Now, January 26, 1959, the recommendation of the master and examiner that a decree of annulment b˄

entered in the above captioned action is rejected and plaintiff is directed to amend her complaint in accordance with this opinion within 20 days after service of this order upon her or her counsel and upon failure to do so, the complaint is dismissed.

## Opinion Sur Exceptions

KOCH, J., March 31, 1959.—On January 26, 1959, we entered an order rejecting the recommendation of the master and examiner that a decree of annulment be entered in the above captioned action. That order permitted plaintiff to amend her complaint to include an appropriate ground for divorce if the facts of the marital relationship warranted such action.

In the opinion accompanying the foregoing order, we decided that plaintiff was not entitled to the annulment for the reason that she was legally married to defendant by virtue of The Marriage Law of August 22, 1953, P. L. 1344, sec. 17, 48 PS §1-17, which provides as follows:

"If a person, during the lifetime of a husband or wife with whom a marriage is in force, enters into a subsequent marriage pursuant to the requirements of this act, and the parties thereto live together thereafter as husband and wife, and such subsequent marriage was entered into by one or both of the parties in good faith in the full belief that the former husband or wife was dead, or that the former marriage has been annulled or terminated by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by death of the other party to the former marriage, or by annulment or divorce, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and immediately after the removal of such impediment."

We deemed this legislation applicable under these facts which were found by the master and examiner: Hughie Jones was previously married on June 1, 1950. On July 10, 1954, the parties to this action were married by a clergyman at Elkton, Md. On this date there was a pending divorce action with respect to the marriage previously entered into by Hughie G. Jones. A decree in that proceeding was entered by this court on September 27, 1954.

The testimony indicates that plaintiff entered the marriage in good faith on the basis of defendant's representation that his previous marriage had been dissolved by divorce. In August plaintiff discovered that defendant was not in fact divorced and in September 1954, was apprised of the decree.

Since it is clear that plaintiff continued to reside with defendant for a period of four years thereafter, we concluded that she was validly married to defendant under the provision of The Marriage Law, supra, and consequently there could be no annulment.

Plaintiff has filed exceptions to our order and argument was heard en banc. The burden of these exceptions is that the legislative enactment upon which we based our decision was not applicable to plaintiff for the reason that she did not live with defendant *in good faith* after the removal of the impediment.

We interpret plaintiff's contention to be that after the discovery of the impediment several weeks after the marriage, her good faith was destroyed by continuing to live with defendant and that therefore she could avail herself of an annulment proceeding. This contention overlooks the clear wording of the statute: ". . . if they continue to live together as husband and wife *in good faith on the part of one of them . . .*"

We interpret the pertinent provision of The Marriage Law to mean that a marriage ceremony illegal at its inception by virtue of an impediment becomes

legal by the removal of that impediment if the parties continue to live together in good faith on the part of one of them. Our research has failed to disclose a decision in Pennsylvania regarding the problem before us but we do have the benefit of decisions in our sister State, Massachusetts.

The Supreme Judicial Court of Massachusetts in Turner v. Turner, 189 Mass. 373, 75 N. E. 612, had occasion to interpret a statutory provision almost identical to the provision of the Pennsylvania statute with which we are concerned. In that case Mary L. Turner sought to annul a marriage to Truman C. Turner which occurred on September 16, 1897. He had a wife then living. Subsequent to this marriage the first wife obtained a divorce, and, in January 1899, she died. Mary L. Turner entered into the marriage in good faith and continued to live with him until March 1904, when she was deserted by Turner. She did not know of the prior marriage, nor of the divorce or death of the former wife, until after the desertion; nor did she live with Turner as wife or cohabit with him after she learned of his prior marriage.

In the Turner case the court, in dismissing the libel, said, on page 376: "The statute contemplates that there may be a fraudulent representation as to the existing impediment, and that in many cases only one of the parties enters into the marital relation in good faith, and yet it expressly declares that if, after the impediment has been removed, the parties continue to live together as husband and wife in good faith on the part of one of them, the marriage is valid. It is manifest that at the time the marriage becomes valid under the statute the fraudulent representation as to the former existence of the impediment, which has ceased to exist, is not a representation affecting the capacity of the fraudulent party then to enter into the marriage. To hold that, after the marriage has become

valid under the statute, the defrauded party upon a subsequent discovery of the original fraud shall have the right, because of such fraud, to avoid the marriage at his or her election, is to defeat the very object of the statute."

In Hopkins v. Hopkins, 287 Mass. 542, 192 N. E. 145, the court took the position that upon the removal of the impediment and the subsequent cohabitation in good faith, the relation becomes such as the innocent party supposed it to be and that the phrase "if they continue to live together as husband and wife in good faith on the part of one of them" applies only to the period subsequent to the removal of the impediments. In the case at bar plaintiff continued to live with defendant and what was originally a meretricious relationship became a legal relationship as, we suggest, she intended it to be. The fact that she lived with defendant for a period of four years can be interpreted only as meaning that she entertained a bona fide desire for matrimony and to validate that which was previously invalid. The words, "good faith", as interpreted under the Massachusetts statute, have no technical or refined meaning, but are used in their ordinary signification. See Gardner v. Gardner, 232 Mass. 253, 122 N. E. 308. 1 Freedman, Law of Marriage and Divorce in Pennsylvania, (2nd ed.), §63, p. 157, arrives at a similar conclusion: "The statutory requirements of 'good faith' requires no more than innocence and an intention to effect a marriage relationship."

Hunt's Appeal, 86 Pa. 294, 297, has been regarded as the leading authority in Pennsylvania as to the rule which prevails where, at the time of their marriage, only one of the parties is innocent and has no knowledge of the existing impediment. There, while a suit in divorce was pending, decedent and claimant were married. After the marriage, they lived together as husband and wife until the death of the husband almost

three years later. A final decree in the first wife's suit was entered two months prior to his death. During this short period he and claimant continued to live together as husband and wife as they had done before, but no actual marriage took place. There was no evidence that claimant had any knowledge of the prior marriage. The Supreme Court held that claimant was not decedent's widow and Justice Paxson said: "In the case at bar the fact is found that the cohabitation was illicit at its commencement, and necessarily continued so down to the decree of divorce, and that there was not a marriage in fact between the date of divorce and death of the decedent. This is conclusive against the appellee."

Counsel for plaintiff urges upon us the principle of Hunt's Appeal and cases similar to it, but we are of the opinion that the observation of Freedman, supra, §63, p. 154, summarizes the present law: "Hunt's Appeal has been followed by a long line of cases and there can be no doubt that it was the established rule in Pennsylvania until the adoption of The Marriage Law."

Mannoni v. Mannoni, 144 Pa. Superior Ct. 605, relied upon by counsel for plaintiff, is of no avail to his position. That case, decided before The Marriage Law, concerned the validity of a gift executed by a husband to his wife before the annulment of his bigamous marriage. Similarly, Wagner v. Wagner, 152 Pa. Superior Ct. 4, is not authority for plaintiff's position since it was decided before the legislation in question. Davis' Estate, 204 Pa. 602; Murdock Estate, 92 Pa. Superior Ct. 275; Hughes Estate, 98 Pa. Superior Ct. 328, each dealt with concepts of common law marriage and we do not regard them as authority for the position that plaintiff was not legally married as a result of the legislation before us.

We conclude and adopt as our view this principle which appears in Freedman, supra, §63, p. 153:

"Where, at the time of the marriage, one of the parties is innocent and has no knowledge of the existing impediment, but the other party is not innocent, the weight of decisional authority, in the absence of extraordinary circumstances, was that the marriage would not be validated merely by the subsequent removal of the impediment during the continuance of cohabitation. This view however, has now been altered by the provision of The Marriage Law that on the removal of an impediment to a marriage entered into by license followed by the parties living together thereafter as husband and wife, if the marriage was entered into by one of the parties in good faith and if cohabitation continues after the removal of the impediment in good faith on the part of one of them, they shall be held to have been legally married from and immediately after the removal of the impediment."

If we were to embrace the contention that since plaintiff did not continue to live with defendant in good faith and that consequently she could procure an annulment, it would not only be contrary to the clear wording of the Statute but what we deem to be public policy. 3 Nelson, Divorce and Annulment (2nd ed.), §31.05, p. 279, states: "The law does not favor annulments of marriage, and it has long been a settled judicial policy to annul marriages only under circumstances and for causes clearly warranting such relief." See also 55 C. J. S. §48.

## Order

Now, March 31, 1959, plaintiff's exceptions to the order entered on January 26, 1959, are dismissed. Plaintiff is directed to amend her complaint in accordance with the opinion and order of January 26, 1959, within 20 days after service of this order upon counsel and upon failure to do so, the complaint is dismissed.