**Lois ARCAND, individually and Lois Arcand, as mother and next friend of Ronald Arcand and Marilyn Arcand**

v.

**Arthur S. FLEMMING, Secretary of Health, Education and Welfare.**

Civ. No. 7909.

United States District Court
D. Connecticut.
June 22, 1960.

---

[1]. See Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781, and cases therein cited at page 782.

Lessner, Rottner, Karp & Groobert, Manchester, Conn., for plaintiff.

Harry W. Hultgren, Jr., U. S. Atty., Hadley W. Austin, Asst. U. S. Atty., Hartford, Conn., for defendant.

J. JOSEPH SMITH, Chief Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), for review of a decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for Children's Insurance Benefits under the Old Age and Survivors Insurance provisions of the Social Security Act, 42 U.S.C.A. § 401 et seq. This action for review is brought by Lois Arcand, individually and on behalf of her children, Marilyn and Ronald Arcand who claim benefits as children of the deceased wage earner, Maurice A. Arcand. It is the latter claim with which we are concerned here. The claim was denied after á hearing before the Referee on the ground that the children would not be entitled to inherit intestate personal property from the deceased wage earner, Maurice A. Arcand, under Connecticut law and therefore are precluded from receiving benefits under the Act as children of the insured. It was decided that

the children were illegitimate under Connecticut law for the purposes of intestate succession since the mother of the children and Maurice A. Arcand, the putative father, were never legally married.

The facts are not in dispute and can be stated as follows: Maurice A. Arcand married one Rosina L'Ecuyer on February 1, 1930 in New York. On March 10, 1940, Maurice married the plaintiff in this action, Lois Arcand, in Vermont. At this time the first wife, Rosina, was still alive and the marriage between her and Maurice had not been dissolved. Lois, however, was unaware of the prior marriage. Shortly after their marriage in Vermont, Maurice and Lois moved to Connecticut where they established a permanent residence. They lived together in this state as man and wife and two children, the present claimants, were born of this relationship. Marilyn was born in 1940 and Ronald in 1944. Later, Lois learned of her mate's prior marriage and insisted that he obtain a divorce so that they could validate their marriage. Maurice agreed and instituted divorce proceedings in the Probate Court of Hampden County, Massachusetts, and on December 16, 1953 was granted a divorce by decree nisi to become absolute on June 17, 1954. On February 24, 1954, before the expiration of the interlocutory period under the Massachusetts decree and while the first wife, Rosina was still living, Maurice and Lois had a second marriage performed by a Justice of the Peace in Darien, Connecticut. It was Lois' belief at this time that no impediment existed and that she and Maurice were free to enter into a valid marriage. The parties continued to reside together until April 24, 1956 when Lois obtained a divorce from Maurice in Connecticut. Maurice subsequently died on November 17, 1956 in Connecticut which was his place of domicile at the time of his death.

The question in this action for review of the decision of the Referee is whether the claimants, Marilyn and Ronald Arcand, are children of the insured within the meaning of the Act so as to make them eligible for Child Insurance Bene-fits under 42 U.S.C.A. § 402(d). Title 42 U.S.C.A. § 416(h)(2) provides that in determining whether an applicant is a child of the insured, the law applied shall be the same as would be applied in the courts of the state where the insured was domiciled at the date of death to determine the devolution of intestate property. We must look to the body of law on this subject in Connecticut since the insured was domiciled here at the time of his death.

Although an illegitimate child is allowed to inherit from the mother in Connecticut, Brown v. Dye, 1795, 2 Root, Conn., 280; Heath v. White, 1824, 5 Conn. 228; Dickinson's Appeal, 1875, 42 Conn. 491; Eaton v. Eaton, 1914, 88 Conn. 269, 91 A. 191, there is no corresponding right of a child with such a status to inherit from the putative rather or succeed to the devolution of the father's intestate property. Heath v. White, supra. A child born out of wedlock may acquire rights of inheritance from and through the father if the parents are later joined in a legal marriage. Section 7058 of the General Statutes of Connecticut (1949 Revision), in effect at the time of the insured wage earner's death, provided in part:

> "Children born before marriage whose parents afterwards marry shall be deemed legitimate and inherit equally with other children."

It follows that the children's right to benefits in the instant case can be established only if it is found that Lois and Maurice Arcand were legally married so as to legitimize the children born of this relationship. At the time of the Darien marriage on February 24, 1954, an impediment unquestionably existed since the Massachusetts divorce decree did not become absolute until June 17, 1954. There is a Massachusetts statute which provides for the validation of a marriage which takes place at a time where an impediment exists but where one of the parties acts in good faith and where the impediment is later removed. Chapter 207, Section 6 of the General

Laws of Massachusetts (Ter.Ed.) provides as follows:

"If a person, during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract with due legal ceremony and the parties live together as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief * * * that the former marriage had been annulled by a divorce * * * they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment, and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents."

The Referee, relying on Commonwealth v. Stevens, 1907, 196 Mass. 280, 82 N.E. 33, held that the Massachusetts statute could not be applied to validate the marriage and legitimize the children when the parties to the marriage were residing outside of Massachusetts at the time the decree nisi became absolute. We think that his reliance on such a broad holding in the Stevens case was misplaced. Commonwealth v. Stevens, supra, was a case involving a criminal prosecution for polygamy. The defendant obtained a divorce from his first wife by decree nisi in Massachusetts. Before the decree became absolute, the defendant removed to Georgia and after residing there for four months married Minnie Tourtelotte who was unaware that an impediment existed at the time of the marriage. The parties set up residence and remained in Georgia until after the interlocutory period under the Massachusetts divorce decree expired. They later came to Massachusetts but had no further marriage ceremony performed. Thereafter, the defendant married one

Jennette H. Smyth and was prosecuted for polygamy on the ground that he was legally married to Minnie Tourtelotte at the time of the Smyth marriage. The State argued that the statute which is now Chapter 207, Section 6, operated to validate the Georgia marriage and made the later marriage polygamous. The Massachusetts Supreme Judicial Court refused to apply the statute in this criminal prosecution and held that a Georgia statute (Civ.Code 1895, §§ 2412, 2416) which made the Georgia marriage void was controlling. The court ruled that the Massachusetts statute had no extraterritorial effect and that since the parties were not in Massachusetts when the interlocutory period expired, it could not be applied.

■ There are two significant aspects to the Stevens case which are important here. First, there were no children involved and no question of legitimacy was before the court. The Massachusetts cases have made it quite clear that the statute is a remedial statute intended for the protection of persons who marry innocently in good faith and to avoid the stigma of illegitimacy for innocent children when one parent is blameless of any conscious transgression of the laws regulating marriage. Vital v. Vital, 1946, 319 Mass. 185, 190, 65 N.E.2d 205; Gardner v. Gardner, 1919, 232 Mass. 253, 258, 122 N.E. 308; cf. Commonwealth v. Ross, 1924, 248 Mass. 15, 142 N.E. 791. The objectives to be attained through application of the statute were not present in the Stevens case and it is plain to see why there would be a reluctance to bring the statute into such a case. There is a second point which is of prime importance here. The Stevens case presented a situation where a Massachusetts court was called upon to apply the Massachusetts statute to the marital status of parties at a time when they were residing in another state. In such a case it was the State of Georgia which had the paramount interest in determining the status of the parties. It was entirely proper that a Massachusetts court would apply the statute in effect

in the foreign state where the parties were married and where they resided during the period of time in question rather than to apply a Massachusetts statute to an internal matter of a foreign state which Georgia would desire to regulate. This is especially true where criminal responsibility is sought to be imposed as a result of what occurred in another state. In the present case, we sit just as a Connecticut forum would sit in determining the marital status of persons who were married and domiciled in Connecticut and to determine the legitimacy of offspring born here. In such a case we feel that it would be a matter of choice for a Connecticut court to apply Chapter 207, Section 6 if it saw fit to do so. The same kind of comity considerations which were present in the Stevens case do not appear in the instant case. Here we have a case where a Connecticut forum would be called upon to pass on a matter in which the forum state has the major interest—the status of children residing here who were born of parents who were residents of this state and who were married here. In giving full faith and credit to the interlocutory nature of the Massachusetts divorce decree, we feel that there is no prohibition against a similar recognition by a Connecticut court of Chapter 207, Section 6, which operates on the force of the transitory impediment under this decree. There is no interest of the State of Massachusetts which would be prejudiced through application of the statute by a Connecticut court and the standards prescribed by the statute do not require any peculiar procedural devices of a Massachusetts forum.

■■■ It is our view that Chapter 207, Section 6 of the Massachusetts General Laws could be applied by a Connecticut court in deciding a question of legitimacy under the succession statute under these facts. The next question is whether a Connecticut court would apply the statute. Since the state court has not ruled on this question, we must look to the same sources which the state court would be likely to consult in order to ascertain what course a Connecticut court would presumably take. See Socony-Vacuum Oil Co. v. Continental Casualty Co., 2 Cir., 1955, 219 F.2d 645, 647. There is no policy in this state against the restoration of illegitimate children to a status of legitimacy in order to afford them the full enjoyment of the rights of legitimacy and this is especially true where only the rights of the innocent child are involved. Connecticut has always been more liberal and considerate than other jurisdictions in its treatment of the illegitimate. Moore v. Saxton, 1916, 90 Conn. 164, 168, 96 A. 960. It has been emphasized that it was not the policy of the law in Connecticut to penalize children for an act of the parent since such treatment is not necessary to foster good morals or sound social conditions. This concern for the welfare and sound treatment of children born out of lawful wedlock was manifested at an early date and is deeply entrenched in the common law of Connecticut. See Dickinson's Appeal, 1875, 42 Conn. 491. With this background, it is our view that a Connecticut court would probably apply a statute such as Chapter 207, Section 6 which has a primary purpose of legitimizing blameless children.

■■ The saving force of the statute takes effect if Lois Arcand entered into the Darien marriage "in good faith in the full belief that the former marriage had been annulled by divorce" and further that Lois and Maurice "continue(d) to live as husband and wife in good faith on the part of (Lois)". In applying these standards, the Massachusetts courts have taken a liberal view in order to effectuate the essential purpose of legitimizing blameless children. See Hopkins v. Hopkins, 1934, 287 Mass. 542, 192 N.E. 145, 95 A.L.R. 1286. The good faith required in the statute does not require that a person be diligent or prudent but that there be an actual honesty of purpose. Gardner v. Gardner, 1919, 232 Mass. 253, 122 N.E. 308. There is testimony in the record that Lois Arcand fully believed that she and Maurice were free to enter into a valid

marriage on February 24, 1954 due to the Massachusetts divorce and that this belief on her part continued as they lived together as husband and wife.

Plaintiff's motion for summary judgment is granted and defendant's cross motion for summary judgment is denied. The plaintiff may submit for entry an appropriate judgment on notice to the defendant.