MARY A. LUFKIN *vs.* RICHARD H. LUFKIN & others.

Suffolk.   December 3, 1902. — January 8, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Constitutional Law.   Marriage.   Practice, Civil,* Exceptions.   *Words,* "Good faith."

A party to a suit has no right to ask for instructions or rulings as to the constitutionality or the construction of a statute except so far as it affects the case on trial.

A request for an instruction based on an assumption not necessarily correct must be refused.

A request for an instruction based upon isolated parts of the evidence where the question is to be determined upon all the evidence should be refused.

St. 1895, c. 427, as amended by St. 1896, c. 499, making valid marriages entered into in good faith, if after the removal of an impediment the parties continue living together as husband and wife in good faith, applies to a case where the marriage was performed before the passage of the acts and the impediment was removed after their enactment, and so applied the statute is constitutional.

St. 1895, c. 427, as amended by St. 1896, c. 499, makes valid a marriage, performed before the passage of either act, entered into in good faith in the erroneous belief that the former wife of the husband had obtained an absolute divorce from him, if after the passage of both statutes the former wife died and the parties continued their cohabitation in good faith until the death of the husband.

In St. 1895, c. 427, making valid marriages entered into in good faith, if after the removal of an impediment the parties continue living together as husband and wife in good faith, the words "good faith" are used in their ordinary sense of honest intention, and do not mean a freedom from knowledge of any circumstances which ought to put a person of ordinary intelligence and prudence upon inquiry.

PETITION, filed in the Probate Court for the County of Suffolk April 13, 1901, by Mary A. Lufkin, to be appointed administratrix of the estate of Richard Lufkin, late of Chelsea, alleging the petitioner to be the widow of the intestate.

On appeal to this court the case was tried before *Loring, J.,* who submitted issues to a jury. The jury answered the three following issues in the affirmative : " 1. Was a due and legal ceremony of marriage performed on October 12, A. D. 1890, between the late Richard Lufkin and Mary A. Jakeman ? 2. Did Mary A. Jakeman, on October 12, 1890, enter into said ceremony in good faith, in the full belief that a former marriage of said Richard Lufkin with one Anna Lufkin had been annulled by divorce ? 3. Did Mary A. Jakeman, after said ceremony, continue in good faith to live with said Richard Lufkin as his wife until the death of said Richard Lufkin, April 12, 1901 ? "

The following facts were not in dispute : On February 16, 1848, Richard Lufkin married one Anna Lufkin, and they lived together as husband and wife until about the year 1864. On September 20, 1864, Anna Lufkin secured in this court a decree of divorce from bed and board from Richard, but no further proceedings ever were taken to make the divorce absolute. Anna Lufkin died September 5, 1898.

The respondents alleged exceptions, which are described by the court.

*A. P. Worthen & E. H. Vaughan,* for the respondents.

*D. F. Kimball,* for the petitioner.

BARKER, J. The issue upon which this case turned was whether the petitioner was the lawful widow of the intestate upon whose estate she had asked for letters of administration. A marriage ceremony had been performed between them in the year 1890, when the deceased had another wife living ; and the petitioner's contention was that her marriage with the deceased had been made valid upon the death of his former wife in the year 1898 by virtue of the provisions of St. 1895, c. 427, as amended by St. 1896, c. 499.

A justice of this court submitted to a jury the issues whether there was a due legal ceremony of marriage in the year 1890, if so whether the petitioner entered into it in good faith in the full belief that a former marriage of the deceased had been an-

nulled by divorce and whether after the ceremony the petitioner continued in good faith to live with the deceased as his wife until his death.

Upon these issues the jury found in the affirmative, and the case is before us upon the respondents' exceptions to refusals to give certain instructions to the jury. The part of the charge bearing upon the requests for rulings is given in the bill, which states that at the close of the charge no request was made for any further or more specific instructions, and that no particular portion of the charge was objected to or excepted to.

1. The first three requests were addressed to the construction and constitutionality of the statutes cited, and asked for rulings that they did not apply to a ceremony of marriage performed prior to the passage of the acts and did apply only to cases in which both the ceremony of marriage and the removal of the impediment occurred after the passage of the statutes, and that any construction by which they should be held to apply to ceremonies performed prior to their passage would make them unconstitutional.

As to the construction of the statutes, the language of the amendatory act of 1896 providing explicitly that St. 1895, c. 427, shall apply to cases in which the impediment to marriage was removed before the act took effect is inconsistent with the construction contended for by the respondents. How broad an application was intended by the Legislature it is not necessary now to determine, further than to say that in our opinion the statutes do apply to cases in which the ceremony having been performed before the statutes took effect, the disability was removed after they took effect, and cohabitation in good faith continued until terminated by a death occurring after the statutes took effect, which is the present case. So construed the statutes are not retrospective under the rule given in *Holyoke* v. *Haskins*, 9 Pick. 259, 263, because the removal of the impediment and the subsequent cohabitation in good faith are facts which did not take place until after the passage of the statutes. If retrospective so far as applying to a marriage performed before their enactment, when applied to the case which was upon trial their operation interfered with no vested property or right, and to that extent at least was within the constitutional power

of the Legislature. *Jacquins* v. *Commonwealth*, 9 Cush. 279, 281, 282. *Goshen* v. *Richmond*, 4 Allen, 458. See *McFaddin* v. *Evans-Snider-Buel Co.* 185 U. S. 505. The respondents had no right to call for instructions or rulings as to the constitutionality or the construction of the statutes except as they affected the case on trial. Therefore the first three rulings requested were refused rightly.

2. The fourth request relying upon the fact that a person against whom an absolute decree of divorce has been granted cannot lawfully marry within two years after the entry of the decree, assumed that the information of a divorce communicated to the petitioner was of a divorce made absolute within two years prior to the date of the marriage ceremony between herself and the deceased and asked an instruction that she was bound to know that a marriage within the two years would be unlawful, and so that she could not have entered into a due legal ceremony of marriage in good faith. But the assumption as to the information communicated to the petitioner was not necessarily a correct one upon the evidence, and for this reason if for no other the instruction requested could not have been given.

3. The fifth request, as to the effect of any deceit practised or participated in by the petitioner in obtaining the marriage license was a request based upon a small portion of the testimony only, while the question of the petitioner's good faith was to be determined upon all the evidence and not upon isolated parts of it. For this reason the request was refused rightly. *Commonwealth* v. *Gavin*, 148 Mass. 449, 451, and cases cited.

The other five instructions refused were based upon the theory that the good faith required by the statute was not only an honest intention but a freedom from knowledge of any circumstances which ought to put a person of ordinary intelligence and prudence upon inquiry. Looking at the general remedial purpose of the statutes in question, the great variety of circumstances which may attend marriages and cohabitations to which their provisions may relate, and the infinitely varying degree of intelligence and prudence of the individuals whose acts may come in question as characterized or not by good faith, within the statutory provision, we think the words were used in their

common signification, and with no technical or restricted meaning, and that the presiding justice was right in ruling that it was not a question whether a person of ordinary prudence would or would not know. The charge treated the words as used in their ordinary sense and as needing no definition from the court for the guidance of the jury, and no request was made after the charge for more specific instructions. As the last five rulings requested were based upon an erroneous theory they were properly refused.

*Exceptions overruled.*