CATHERINE FREITAS VITAL *vs.* ANTHONY REGO VITAL.

Bristol.     October 22, 1945. — February 7, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Marriage and Divorce,* Validity of marriage.     *Words,* "In force."

The applicability of G. L. (Ter. Ed.) c. 207, § 6, to a marriage entered into outside the Commonwealth in violation of § 10 by a divorced person still subject to the two year prohibition in c. 208, § 24, is the same as it would be if the marriage had taken place within the Commonwealth.

Within the meaning and for the purposes of G. L. (Ter. Ed.) c. 207, § 6, the marriage of one against whom a decree nisi of divorce has been obtained in this Commonwealth continues "in force" as an "impediment" to his remarrying not only until the decree becomes absolute but also until the expiration of the two year period specified in c. 208, § 24.

A marriage, entered into in another State by a man in violation of G. L. (Ter. Ed.) c. 207, § 10, and before a decree nisi of divorce obtained by his then wife against him here had become absolute, with a woman who acted in "full belief" that the man had been divorced and was free to marry her, where the man and the woman following the marriage lived here together as husband and wife in good faith on her part until a time more than two years after the decree became absolute, was, under § 6, a lawful marriage "from and after" the expiration of such two years.

LIBEL, filed in the Probate Court for the county of Bristol on February 27, 1945.

The case was heard by *Hitch*, J.

*J. B. Nunes*, for the libellant.

*B. Smola*, for the libellee.

DOLAN, J. This is a libel for affirmation of marriage. See G. L. (Ter. Ed.) c. 207, § 14. The libel also contains prayers that the libellant be given the custody of the minor child of herself and the libellee and that an allowance be made to her for her support and that of the minor child. The ordering part of the decree entered by the judge, from which the libellant appealed, reads as follows: "It is decreed that the marriage of the libellant to this libellee is void in accordance with the provisions of General Laws Chapter 207, Section 10, and it is further decreed that the libellant contracted said marriage with the libellee with the full belief that he was capable of contracting said marriage, and that his former wife had been divorced, leaving the party to the former marriage free to marry again, and that the issue of her said marriage, namely, Mildred Rego Vital, is and shall be the legitimate issue of the libellant." The recitals of the decree include a statement of the material facts upon which the judge based his decision. See *Curley* v. *Curley*, 311 Mass. 61, 67, and cases cited. They may be summed up as follows: At the time of the marriage of the parties on July 2, 1927, the libellee was married to another. His then wife had obtained a decree of divorce which did not become absolute until July 7, 1927, and the libellee was thereafter prohibited from remarrying for two years. The parties were married on July 2, 1927, in Rhode Island, into which State the libellee went for the purpose of avoiding the laws of this Commonwealth and intending to continue to reside in New Bedford. Said marriage of the libellant to the libellee is void here, but the libellant contracted said marriage in the full belief that the libellee was capable of contracting said marriage and that he had been divorced from his then wife and was free to marry her. The parties thereafter on September 15, 1928, "went through a religious ceremony in . . . Providence, but that was simply a religious ceremony because the first ceremony had not been performed in church. It was not under the authority of

any license of the civil authorities, and even if it had been it would have made no difference to the final result. Thereafter the parties lived together in good faith on the part of the libellant until after the expiration of two years from the date of the divorce aforesaid of the libellee's wife from him." We construe this to mean from the date when the decree nisi became absolute. [1]

The libellant contends that, upon the facts found, she is entitled to a decree affirming her marriage under the provisions of G. L. (Ter. Ed.) c. 207, § 6, which reads as follows: "If a person, during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract with due legal ceremony and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, that the former marriage had been annulled by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment, and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents." General Laws (Ter. Ed.) c. 207, § 4, provides as follows: "A marriage contracted while either party thereto has a former wife or husband living, except as provided in section six and in chapter two hundred and eight, shall be void." General Laws (Ter. Ed.) c. 208, § 21, [2] provides that "Decrees of divorce shall in the first instance be decrees nisi, and shall become absolute after the expiration of six months from the entry thereof, unless the court within said period, for sufficient cause, upon application of any party interested, otherwise orders." General

---

[1] It appears from the brief of the libellee that he and the libellant resided together in this Commonwealth from the time of their marriage until April, 1930.

[2] See St. 1934, c. 181, § 1.

Laws (Ter. Ed.) c. 208, § 24, [1] provides that "After a decree of divorce has become absolute, either party may marry again as if the other were dead, except that the party from whom the divorce was granted shall not marry within two years after the decree has become absolute." General Laws (Ter. Ed.) c. 207, § 10, provides that "If any person residing and intending to reside in this commonwealth is disabled or prohibited from contracting marriage under the laws of this commonwealth and goes into another jurisdiction and there contracts a marriage prohibited and declared void by the laws of this commonwealth, such marriage shall be null and void for all purposes in this commonwealth with the same effect as though such prohibited marriage had been entered into in this commonwealth."

General Laws (Ter. Ed.) c. 207, § 10, imposes no other consequences upon a marriage contract entered into in a foreign jurisdiction in violation of its provisions than those that would follow had the contract been entered into at the same time in this Commonwealth. The purpose of G. L. (Ter. Ed.) c. 207, § 10, was to except marriages entered into in violation thereof from the "general rule of law . . . that a marriage contracted elsewhere, if valid where it is contracted, is valid here, although the parties intended to evade our laws, unless . . . the marriage is one deemed 'contrary to the law of nature as generally recognized in Christian countries.'" *Commonwealth* v. *Graham*, 157 Mass. 73, 75, and cases cited. So, as in the case of marriages within the Commonwealth in violation of c. 208, § 24, marriage contracts entered into without the Commonwealth in violation of the provisions of c. 207, § 10, are void just as though they had been entered into here. The present case is therefore governed by the same principles as though the marriage in question had been entered into in this Commonwealth.

The present case comes within the literal provisions of G. L. (Ter. Ed.) c. 207, § 6, since at the time of the marriage of the parties the decree of divorce obtained by the former wife of the libellee had not become absolute, and accord-

---

[1] See St. 1943, c. 168, § 1.

ingly that marriage was then "in force." *Rollins* v. *Gould,*
244 Mass. 270, 272. *Eldridge* v. *Eldridge,* 278 Mass. 309,
312. We are, however, of opinion that under the proper
interpretation of § 6 the prior marriage continued "in
force" for the purposes of § 6 during the period after the
decree of divorce became absolute within which the libel-
lee was prohibited from remarrying. Within the meaning
and for the purposes of § 6, the prior marriage of the libel-
lee continued "in force" not only until the decree of divorce
became absolute but also until the impediment created by
G. L. (Ter. Ed.) c. 208, § 24, ceased to exist. That was so
held in *Commonwealth* v. *Josselyn,* 186 Mass. 186, 187–188.
That case was an indictment for polygamy. The defendant
was found guilty and his exceptions were overruled. The
facts were these: The defendant was divorced by a wife
whom he had married on July 20, 1887. The decree nisi
of divorce was made absolute on November 11, 1894. On
June 15, 1896, that is, within two years thereafter, the
defendant married one Wiley. They lived together as
husband and wife until November 2, 1903. On November
9, 1903, the defendant married one Trommer. That mar-
riage was the subject of the indictment. Holding that,
when entered into, the marriage of the defendant to Wiley
was invalid, the court, speaking through Knowlton, C.J.,
said: "There was evidence tending to show that the second
marriage contract was entered into with due legal ceremony,
that the parties thereafter lived together as husband and
wife, that the marriage was entered into by the wife in
good faith, in the full belief that the former marriage had
been annulled by divorce, that the impediment to the mar-
riage was removed by the decree of divorce previously
entered and the lapse of two years from the entry of the
decree, and that the parties then continued to live together
as husband and wife, the wife acting in good faith. Under
the instructions of the court the jury must have found all
these propositions in favor of the contention of the Com-
monwealth, and in accordance with the testimony of Linda
G. Josselyn. It follows that she and the defendant are
deemed to have been legally married, and their children are

deemed to be legitimate issue of both parents, if it can be said that, at the time of the marriage, the former marriage was still in force within the meaning of the statute. The statute applies only to cases in which at the time of the 'marriage ceremony, a former husband or wife of one of the parties was living, and the former marriage with such person was still in force.' This [St. 1895, c. 427, now G. L. (Ter. Ed.) c. 207, § 6] is a remedial statute intended for the protection of persons who marry innocently and in good faith, and of their children. It is intended to cover cases in which the marriage is invalid by reason of a previous marriage of one of the parties, that makes it illegal for him or her to contract a second marriage. In this case, for many purposes, the former marriage was not in force at the time of the second marriage. But in reference to the subject to which the statute relates it was in force. It was in force as a restraint upon this defendant which precluded him from entering into a lawful marriage. The words 'in force' are used in reference to the effect of the former marriage upon the right of the party to marry again. They are not used in reference to the effect of the marriage upon rights of property, or upon the personal relations of the former husband and wife. As to such matters, and as to the right of the libellant to marry again, the former marriage was not in force. But, as to the matters for which this statute was designed to provide a remedy, it was in force. The question to be determined in the construction of the statute is not affected by the fact that it arises upon the trial of an indictment. It is precisely the same as if an issue of the legitimacy of the children were before the court in a civil suit. The jury were rightly instructed that, upon the facts stated, the marriage was in force within the meaning of the statute, and upon the findings of the jury the statute was applicable. The impediment was removed by a proper decree of divorce. It is immaterial that the decree had been entered before the marriage in question. It had not then removed the impediment, because the law provided that the impediment should continue until the expiration of two years from the entry of the decree of divorce. When the

time expired, the removal of the impediment was effected by the decree" (pages 188–189).   See *Smith* v. *Smith,* 58 Fed. (2d) 883.

In *Turner* v. *Turner,* 189 Mass. 373, 375–376, the court said in part, "While one of the objects of the statute is to protect persons who enter into the marriage relation in good faith, the broad general purpose of the statute is to provide against illegitimacy of children and to protect the public interests.   Its purpose is to provide that the marriage ceremony, illegal at first by reason of the existence of an impediment, shall be regarded as taking place at the time the impediment is removed and as covering all marital relations thereafter assumed in good faith.   It is immaterial whether the removal of the impediment is known or unknown.   Whether known or not, the marriage ceremony becomes operative upon the removal, if the parties continue to live together as husband and wife in good faith on the part of one of them.   Such a construction of the statute is not only in accordance with its plain reading, but it carries out the real bona fide intention of the innocent party to contract a valid marriage.   Upon the removal of the impediment and the subsequent cohabitation in good faith, the relation becomes such as the innocent party supposed it to be.   And such a relation thus once sanctioned in the law, legitimatizes the children and leads to the protection of the moral welfare of the community."   It is true that in that case the impediment of a prior existing marriage was removed by the death of the former wife, but the statement we have just quoted from the opinion in that case applies with equal force where the impediment of the existing marriage is removed by a decree of divorce becoming absolute and the impediment that survives the decree ceasing to exist.   The *Turner* case was rested on the provisions of R. L. c. 151, § 6 (now G. L. [Ter. Ed.] c. 207, § 6).   In the present case the libellee, however, contends that the other cases that we have cited and such other cases as *Whippen* v. *Whippen,* 171 Mass. 560, and *Gardner* v. *Gardner,* 232 Mass. 253, were governed by R. L. c. 151, § 10, and its predecessors and not by G. L. c. 207, § 10, which derives from St.

1913, c. 360, since the facts upon which they were decided arose at a time when to bring the marriage in the foreign jurisdiction within R. L. c. 151, § 10, it was necessary that both of the parties thereto should have gone into that juris- diction with the intent to evade our laws, and further con- tends that by St. 1913, c. 360, now G. L. (Ter. Ed.) c. 207, § 10, the marriage is void if either of the parties goes into the foreign jurisdiction and enters into the marriage con- tract in violation of § 10. Setting up his own illegal conduct in that respect, the libellee argues that the provisions of G. L. (Ter. Ed.) c. 207, § 6, do not apply to the marriage in question here, entered into in violation of § 10. In support of this argument the libellee relies upon *Tyler* v. *Tyler,* 170 Mass. 150, *Murphy* v. *Murphy,* 249 Mass. 552, and *Wright* v. *Wright,* 264 Mass. 453. In *Tyler* v. *Tyler,* 170 Mass. 150, a libel for divorce, these facts appeared: The libellant had been divorced from a former husband by a decree in his favor which was made absolute on October 12, 1887. On October 25, 1887, while her former husband was living, she went to New Hampshire with the libellee, both intending to evade our statutes and intending to con- tinue to reside in this Commonwealth. They were married at Salem, New Hampshire, and returned to Lawrence the same day, where they resided thereafter as husband and wife up to the time she left the libellee shortly before the filing of the libel on July 17, 1897. And the court held that the case was governed by Pub. Sts. c. 145, §§ 4, 10 (now G. L. [Ter. Ed.] c. 207, §§ 4, 10) and c. 146, § 22 (now G. L. [Ter. Ed.] c. 208, § 24), and was not within St. 1895, c. 427 (now G. L. [Ter. Ed.] c. 207, § 6) and St. 1896, c. 499; that the latter statutes were not intended to repeal Pub. Sts. c. 145, § 10 (predecessor of G. L. [Ter. Ed.] c. 207, § 10), and that the marriage was void. Accordingly the libel was dismissed. The implication, if any, in that case to the effect that what is now G. L. (Ter. Ed.) c. 207, § 6, did not apply to marriages entered into in violation of § 10 was unnecessary to the decision. That it did not apply to the facts of that case is obvious. In *Ewald* v. *Ewald,* 219 Mass. 111, where the libellant who sought to have annulled

a marriage that she had entered into in New Hampshire, to which State she had gone to enter into the marriage in violation of our statute, the court refused even to pass upon the validity of her marriage, because she made her wrongful conduct the ground of her application for relief from its consequences, and left her in the position in which she placed herself and dismissed her libel. In the *Tyler* case the result reached was right on its facts for the same reasons. See also *Payzant* v. *Payzant*, 269 Mass. 70, 72. In *Levanosky* v. *Levanosky*, 311 Mass. 638, a libel for divorce, where the marriage had been entered into in New York by residents of this Commonwealth before the decree nisi of divorce obtained from the libellee by his former wife had become absolute, but the parties had lived together as husband and wife after the expiration of the two year period therefrom during which the libellee had been prohibited from remarrying, relief was denied the libellant on the ground that she had failed to show as required by c. 207, § 6, that she married the libellee "in good faith, in the full belief that the former . . . wife was dead, that the former marriage had been annulled by a divorce, or without knowledge of such former marriage." The implication is that otherwise the provisions of § 6 would have applied and that relief could have been granted thereunder.

*Murphy* v. *Murphy*, 249 Mass. 552, was a petition for separate support. The marriage of the parties had been entered into in Providence, Rhode Island (on May 23, 1921), within two years after the respondent's former wife had been granted a divorce from him, by a decree which became absolute on November 13, 1920. The petitioner, however, had acted in good faith, but before the expiration of the two years from the decree absolute the respondent deserted the petitioner. The court held that the marriage was invalid, and that the Probate Court was without jurisdiction to enter the decree of separate support that it had entered, and reversed that decree. In so doing the court based its decision on the provisions of G. L. c. 207, § 10, stating that, as distinguished from predecessor statutes which had required action by both parties to the contract

in violation of the statute if the inhibition of the statute was to be applied, § 10 in its present form rendered such a marriage void notwithstanding the innocence of one of the parties. In the *Murphy* case c. 207, § 6, of course did not apply since the parties ceased to live together before the expiration of the two years from the decree absolute of divorce obtained by the former wife of the respondent. The result reached was therefore right, but the case is not authority for the proposition that upon the facts presented in the present case G. L. (Ter. Ed.) c. 207, § 6, is not satisfied. We do not follow the statement in the *Murphy* case to the effect in substance that the present form of § 10 operates to make § 6 inapplicable to cases of marriages entered into in violation of § 10.

*Wright* v. *Wright*, 264 Mass. 453, was a petition for separate support. The facts were these. The petitioner married the respondent in Pawtucket, Rhode Island, on August 4, 1921, with due legal ceremony. The respondent had been divorced by a former wife by a decree which became absolute on November 12, 1920. By force of G. L. c. 208, § 24, he was prohibited from remarrying until November 12, 1922. The parties were both residents of Massachusetts and went to Rhode Island for the express purpose of being married, intending to return to Massachusetts and to reside here. The respondent knew, but the petitioner did not know, that at the time of his marriage to the petitioner he could not be legally married in this Commonwealth. The parties returned to Massachusetts and lived together as husband and wife in good faith on the petitioner's part until August 14, 1924. At that time the respondent left her and thereafter did not reside with her. "There was no evidence that the former wife . . . [was] not still alive." The court rejected the contention of the petitioner that her marriage to the respondent "became a legal marriage from and after November 13, 1922, by force of G. L. c. 207, § 6," and, citing *Murphy* v. *Murphy*, 249 Mass. 552, as authority for the proposition that the petition could not be maintained, said in substance that the decision in *Whippen* v. *Whippen*, 171 Mass. 560, that, unless both parties to the

prohibited marriage had the intent to avoid the statutory prohibition then in force, the marriage, valid where solemnized, was not null here, was met by the change in the statute, St. 1913, c. 360, and that § 6 of G. L. c. 207 did not apply in the case of marriages prohibited by G. L. c. 208, § 24, and made void by G. L. c. 207, § 10. Continuing the court said: "The respondent was unmarried after the decree dissolving his former marriage became absolute. At the time of the ceremony at Pawtucket he had no former wife living with whom a marriage was still in force. The impediment to be removed by death or a valid divorce is an existing marriage. No such impediment here existed" (page 456). The decree dismissing the petition was affirmed.

We do not concur in the reasoning or in the result reached in the *Wright* case. Neither is supported by the authorities cited. We have already pointed out that the *Tyler* case cannot be regarded as authority for the proposition that G. L. (Ter. Ed.) c. 207, § 6, does not apply to marriages entered into in contravention of § 10, where the requirements of § 6 have been satisfied. Manifestly for reasons already given the *Murphy* case cannot be held properly to be authority for that proposition. In so far as the *Wright* case decides in effect that the impediment to be removed is that of a marriage in force when the subsequent marriage is entered into, that the marriage is annulled by the decree becoming absolute, and that thereafter, notwithstanding the further impediment flowing therefrom, the marriage is not "in force," we do not concur. Nor do we agree with the reasoning of *Wright* v. *Wright*[1] that § 6 does not apply to cases coming within the provisions of § 10 because of the change in § 10 effected by the enactment of St. 1913, c. 360, or with the statement to like effect in *Murphy* v. *Murphy*, 249 Mass. 552, 553–554. The only effect of the change in § 10 was to make the marriage entered into in violation of § 10 void without regard to the good faith of one of the parties, just as though it had been entered into in this Commonwealth in violation of G. L. (Ter.

---

[1] See *Rhodes* v. *Rhodes*, 96 Fed. (2d) 715, 716.

Ed.) c. 208, § 24. See *Palmer* v. *Palmer*, 265 Mass. 242. We have discovered no case since the enactment of what is now G. L. (Ter. Ed.) c. 207, § 6, by St. 1895, c. 427 (see R. L. c. 151, § 6) where it has been held or stated as in *Wright* v. *Wright*, 264 Mass. 453, that § 6 does not apply to a marriage entered into in this Commonwealth in violation of c. 208, § 24, a marriage admittedly void just as was the marriage in the present case when entered into. On the contrary, in *Tozier* v. *Haverhill & Amesbury Street Railway*, 187 Mass. 179, where the marriage in question had been entered into in this Commonwealth in violation of Pub. Sts. c. 146, § 22 (now G. L. [Ter. Ed.] c. 208, § 24), and where the plaintiff invoked the aid of R. L. c. 151, § 6 (now G. L. [Ter. Ed.] c. 207, §. 6), the court impliedly held that in proper case relief could be granted under § 6, but that the plaintiff had not shown that either of the parties to the marriage contract had entered into it in such circumstances as to bring the case within the statute (page 181). And in *Commonwealth* v. *Josselyn*, 186 Mass. 186, the marriage held valid under St. 1895, c. 427 (now G. L. [Ter. Ed.] c. 207, § 6), had been entered into in this Commonwealth in violation of Pub. Sts. c. 146, § 22 (now G. L. [Ter. Ed.] c. 208, § 24). That § 6 is to be operative in case of a marriage void whether because of the existence of a marriage to a former spouse that is then "in force," or because of the impediments flowing from a decree of divorce, is further evidenced by the provision of G. L. (Ter. Ed.) c. 207, § 4, that a marriage contracted while either party thereto has a former wife or husband living, "except as provided in section six and in chapter two hundred and eight," shall be void. Section 6 provides expressly for the case of an honest but mistaken belief that the former marriage had been dissolved by a divorce. It seems to be settled that § 6 applies, therefore, in proper case to marriages entered into in this Commonwealth in violation of c. 208, § 24, and, as we have already pointed out, marriages entered into without the Commonwealth in violation of § 10 must be dealt with as to their effect just as though they had been solemnized here in violation of c. 208, § 24. It follows that in proper case

the provisions of § 6 apply as well to marriages entered into in violation of § 10. In the present case the judge has found every element that is required to satisfy the provisions of § 6, and the libellant is entitled to the relief in such case thereby ordained.

The decree entered in the court below is reversed, and a final decree is to be entered affirming the marriage of the libellant to the libellee, establishing the legitimacy of the minor child of their union, and after further proceedings setting forth therein such orders as the court may make in the matter of the prayers of the libel that the libellant be given custody of the minor child and that the libellee be required to provide support for the libellant and the minor child. See G. L. (Ter. Ed.) c. 207, § 14.

*So ordered.*