Merrimack,
No. 4376.

### ELLIS W. SMITH v. RENEE G. SMITH.

Argued January 4, 1955.

Decided January 28, 1955.

*Robert D. Branch* (by brief and orally), for the plaintiff.

*George P. Cofran* and *Paul A. Rinden* (*Mr. Rinden* orally), for the defendant.

DUNCAN, J.   Neither party questions the ruling of the Trial Court that since the defendant was a married woman at the time of the ceremony in New Hampshire, the marriage in this state was absolutely void.   R. L., c. 339, s. 1; *Bickford* v. *Bickford*, 74 N. H. 448; *Fowler* v. *Fowler*, 96 N. H. 494.   The plaintiff contends that the law of New Hampshire is the sole applicable law, relying upon Laws 1945, c. 12, which provides that the Superior Court shall have jurisdiction to annul a marriage entered into in this state "even though neither party has been at any time a resident herein." Since neither party to this action was a resident of New Hampshire, the jurisdiction of the court depended upon this statute.   *Cf. Roop* v. *Roop*, 91 N. H. 47; *Turner* v. *Turner*, 85 N. H. 249.   The extent to which a decree of nullity entered under this statute would be entitled to recognition in the state of domicile of the parties is a question not presented, and requires no consideration here.   See *Feigenbaum* v. *Feigenbaum*, 210 Ark. 186, 190.   As the Trial Court pointed out, the validity of the ceremony performed here is controlled by the law of this jurisdiction.   *Foster* v. *Foster*, 89 N. H. 376.   The effect of the subsequent conduct of the parties in cohabiting as man and wife in Massachusetts must be determined according to the law of that jurisdiction, where they were domiciled at the time the impediment to their marriage was removed.   *Fowler* v. *Fowler*, 96 N. H. 494, 496.   See Goodrich on Conflict of Laws (3rd *ed.*) 357.   "It is a general principle, that the status or condition of a person, the relation in which he stands to another person . . . is fixed by the law of the domicil; and that this status

. . . [is to be] upheld in every other state, so far as . . . not inconsistent with its own laws and policy." *Ross* v. *Ross*, 129 Mass. 243. See *Kapigian* v. *Minassian*, 212 Mass. 412, 413; 50 Harv. L. Rev. 1119, 1190.

By conferring upon the Superior Court authority to entertain annulment proceedings between nonresidents with respect to marriages solemnized in this state, the Legislature did not prescribe that rights arising out of subsequent conduct of the parties in another jurisdiction where they were domiciled should be determined solely with reference to the laws of this state, nor could our statutes have such extraterritorial effect.

When a common-law marriage has been validly contracted, it will be recognized as valid in another state in which the parties later became domiciled, even though such a marriage may not legally be contracted in the latter state. *Henderson* v. *Henderson*, (Md. App.) 87 A. (2d) 403; *In re Gallagher's Est.*, 35 Wash. (2d) 512. The same principle applies in this case. See Keezer, Marriage & Divorce (3rd *ed.*) 278; Note, 36 Va. Law Rev. 665, 672. If the requirements of the Massachusetts statutes were met, the marriage of the parties became valid upon the removal of the impediment during their cohabitation as domiciliaries there. G. L. Mass. (Ter. *ed.*) *c.* 207, *s.* 6. If it became valid in the state of domicile, their marriage is properly to be recognized as valid here. See Griswold, Renvoi Revisited, 51 Harv. L. Rev. 1165, 1199-1200. The domiciliary state "has a substantial interest in the marriage," while this state has no interest "in the intrinsic validity of the status, unless the status is to be enjoyed" here. *Sirois* v. *Sirois*, 94 N. H. 215, 216. If the status of the parties might better have been determined in the state where they were domiciled at marriage and thereafter, and the Court in its discretion have declined to exercise the jurisdiction conferred upon it by the statute (see *Jackson* v. *Company*, 86 N. H. 341), the plaintiff is in no position to complain that it did not, having chosen to bring his petition here. See also, *Thistle* v. *Halstead*, 95 N. H. 87.

The plaintiff further contends that if the status of the parties is properly determinable according to the law of Massachusetts, then under that law he is entitled to an annulment. This argument is based upon General Laws of Massachusetts (Ter. *ed.*) *c.* 207, *s.* 10, commonly known as the marriage evasion act, which provides that a marriage entered into in another jurisdiction by a person residing and intending to continue to reside in Massachusetts who is

prohibited from marrying in Massachusetts shall be void for all purposes in that commonwealth, as if entered into there. In support of his argument the plaintiff relies principally upon the decisions of *Tyler* v. *Tyler*, 170 Mass. 150, and *Levanosky* v. *Levanosky*, 311 Mass. 638. In denying the petition, the Trial Court relied upon G. L. (Ter. *ed.*), *c.* 207, *s.* 6, the pertinent provisions of which are that where a person having a spouse with whom a marriage is in force has entered into a subsequent marriage contract, and that contract was entered into "by one of the parties in good faith, in the full belief . . . that the former marriage had been annulled by a divorce . . . they shall, after the impediment . . . has been removed . . . be held to have been legally married from and after the removal of such impediment," provided they have continued "to live together as husband and wife in good faith on the part of one of them."

*Tyler* v. *Tyler, supra,* was a libel for divorce brought by a wife from whom a prior divorce had been granted and who was forbidden by the provisions of G. L. (Ter. *ed.*), *c.* 208, *s.* 24, to remarry "within two years after the decree [became] absolute." Her second marriage within the two-year period was held invalid under *c.* 207, *s.* 10, *supra,* and not to be within *c.* 207, *s.* 6, and it was said that section 6 was not intended to repeal section 10. However in *Vital* v. *Vital,* 319 Mass. 185, 192, 193, the court reviewed *Tyler* v. *Tyler,* and held that although the result of the case was right "on its facts," because the plaintiff was not entitled to relief grounded upon her own misconduct (*Ewald* v. *Ewald,* 219 Mass. 111), "the implication, if any . . . to the effect that what is now G. L. (Ter. *ed.*), *c.* 207, *s.* 6, did not apply to marriages entered into in violation of *s.* 10 was unnecessary to the decision." The court proceeded to overrule the holding of *Wright* v. *Wright,* 264 Mass. 453, and of *Murphy* v. *Murphy,* 249 Mass. 552, "that *s.* 6 does not apply to cases coming within the provisions of *s.* 10" (*Vital* v. *Vital, supra,* 195), and entered a decree affirming a marriage entered into in Rhode Island in violation of section 10, because the conduct of the petitioner fell within the provisions of section 6 with respect to entry into the ceremony in good faith by one of the parties followed by the requisite cohabitation in Massachusetts. Thus it appears that *Tyler* v. *Tyler,* as qualified by *Vital* v. *Vital,* is not conclusive authority in the plaintiff's favor.

The argument is made by the plaintiff that the Trial Court erred in relying upon section 6 of the Massachusetts statute in

denying the petition, because it found that both parties knew when they were married that the Massachusetts decree of divorce had not became final. The inference is that this finding foreclosed any finding that either party entered into the New Hampshire ceremony "in good faith in the full belief . . . that the former marriage had been annulled by a divorce," as required by section 6. This contention would give no effect to the further finding made, that the parties entered into the ceremony "in good faith in the belief that the marriage was lawful in this state." We are of the opinion that these findings were not inconsistent as a matter of law. There was evidence that the defendant, as the plaintiff knew, had been advised by an attorney that she "might go up to New Hampshire and be married and it would be legal." The impediment to the marriage lay in the fact that the defendant's divorce had not become absolute because under G. L. (Ter. *ed.*), *c.* 208, *s.* 21, the decree entered was a decree *nisi* which would become absolute only "after the expiration of six months from the entry thereof." The divorce had nevertheless been decreed, and the advice which the evidence indicates had been given to the defendant was not impossible of belief, in good faith.

Section 24 of the same chapter imposed a further impediment by its provision that "after a decree . . . has become absolute" either party may marry again, "except that the party from whom the divorce was granted shall not marry within two years after the decree has become absolute." Marriages in violation of such a penal provision have been held not to be invalid where performed in another jurisdiction within the period of prohibition. Of such a marriage the Massachusetts court has said: "It is assumed that the marriage in New Jersey was valid, and must be so recognized in this Commonwealth . . . . " *Palmer* v. *Palmer*, 265 Mass. 242, 244. See also, *Commonwealth* v. *Lane*, 113 Mass. 458; *Phillips* v. *Madrid*, 83 Me. 205; *State* v. *Richardson*, 72 Vt. 49; *Moore* v. *Hegeman*, 92 N. Y. 521. Had the New Hampshire ceremony taken place after October 14, 1947, the marriage would have been valid under New Hampshire law. *Commonwealth* v. *Lane, supra*, 462. See 26 So. Cal. L. Rev. 280, 291. The difference in the effect of section 24, and that of section 21, upon remarriage is one not likely to be understood by laymen. The Trial Court could reasonably find upon the evidence that the parties in good faith believed that they had contracted a valid marriage in New Hampshire, even though they appreciated that they could not have done so in

Massachusetts. The defendant testified that she entered into the marriage "with the belief that [she] had a right to marry in New Hampshire." The plaintiff likewise testified that he "honestly intended to get married" although it was not his "full belief that the former marriage had been annulled . . . because you have a case of the two separate states." He continued: "I was not a lawyer. I do not know the legal implications of all these things."

The existence of the "good faith" required by G. L., c. 207, s. 6, was a question of fact as to "whether there [was] actual honesty of purpose" (*Gardner* v. *Gardner*, 232 Mass. 253, 258), and did not depend upon "freedom from knowledge of any circumstances which ought to put a person of ordinary intelligence and prudence upon inquiry." *Lufkin* v. *Lufkin*, 182 Mass. 476, 479. See also, *Carmichael* v. *Carmichael*, 324 Mass. 118; *Hopkins* v. *Hopkins*, 287 Mass. 542; *Turner* v. *Turner*, 189 Mass. 373. In *Levanosky* v. *Levanosky*, *supra*, 311 Mass. 638, 640, it was expressly held: "The statute applies only to one who innocently intends honestly to contract a presently valid marriage."

Within the meaning of these decisions, the Trial Court's finding that the parties entered into the New Hampshire ceremony in good faith in the belief that the marriage was lawful in this state, was not necessarily inconsistent with its further finding that both knew that the Massachusetts decree was not final; and it was warranted upon the evidence. The evidence was "not so clear as to require the conclusion that [they] did not act in good faith." *Gardner* v. *Gardner*, *supra*, 258. This case is to be distinguished from the *Levanosky* case, *supra*, relied upon by the plaintiff, because of the implied finding in that case that the parties did not enter into the marriage ceremony in good faith, and the holding that the libelant's contention to the contrary found "no support in the testimony." *Id.*, 640.

We conclude that there was no error in the rulings of the Trial Court upon which denial of a decree of nullity was based. *Carmichael* v. *Carmichael*, *supra*. This conclusion removes any necessity for considering the defendant's exception to the denial of her motion to dismiss, grounded upon *Ewald* v. *Ewald*, 219 Mass. 111, *supra*, which is not urged if denial of the petition is sustained.

The defendant's exception to the denial of her petition for temporary support *pendente lite* remains for consideration. It presents the question of whether the Court could properly enter such an order pending an appeal from the decree denying the petition for annulment. Doubtless it was intended by the enactment of

Laws 1945, *c.* 12, as the defendant argues, that the court should have all of the authority with respect to annulment proceedings between nonresidents that it has with respect to like proceedings between residents. We are of the opinion however, that the authority to enter orders for temporary support, *pendente lite,* does not reside in the court upon any petition for annulment. The power to require the payment of money "upon a decree of nullity" is plainly conferred by statute, and has long been exercised. R. L., *c.* 339, *s.* 16. *Bickford* v. *Bickford,* 74 N. H. 448; *Fowler* v. *Fowler,* 97 N. H. 216. In the latter case an order for temporary support of the defendant was upheld as incident to her cross petition for separate maintenance, and expressly authorized by statute. R. L., *c.* 339, *s.* 31. Since the defendant in the case before us is a nonresident, this mode of relief is not open. *Eckstrom* v. *Eckstrom,* 98 N. H. 177.

Apart from its settled interpretation, the concluding clause of R. L., *c.* 339, *s.* 16, *supra,* authorizing the Court to make such orders as may be necessary "before or after the decree" of nullity, might be thought to furnish statutory authority to order temporary support in this case. But as was pointed out in *Veino* v. *Veino,* 96 N. H. 439, the section has never been considered to furnish such authority in divorce cases, (*Rowell* v. *Rowell,* 63 N. H. 222; *Wallace* v. *Wallace,* 75 N. H. 217); and the Court lacked such authority until 1919 when R. L., *c.* 339, *s.* 14, was amended to permit an order for temporary support in divorce actions alone. *Veino* v. *Veino, supra,* 441. No comparable provision has ever been made with respect to annulment proceedings, and we conclude that no such authority was intended.

We recognize that the rule is otherwise in some jurisdictions, where the matter of temporary support in annulment proceedings has been held to rest in the discretion of the Trial Court even in the absence of statute. See *Levy* v. *Levy,* 309 Mass. 230, 237; *Higgins* v. *Sharp,* 164 N. Y. 4; 3 Nelson, Divorce and Annulment, *s.* 31.56. The law of this jurisdiction to the contrary is too well established to permit it here, in the absence of legislative action. *Veino* v. *Veino, supra; Clough* v. *Clough,* 80 N. H. 462. Although not for the grounds stated, the order denying the defendant's motion for lack of jurisdiction was properly entered.

*Exceptions overruled.*

All concurred.