NORMAN K. VAN BIBBER'S (dependents') CASE.

Suffolk.   October 3, 1961. — January 11, 1962.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Independent contractor, What insurer
liable. *Marriage,* Validity. *Words,* "Premises."

In § 18 of the workmen's compensation act, G. L. c. 152, stating that under
certain conditions the insurer of an insured person shall pay to em-
ployees of an independent contractor or a subcontractor doing the in-
sured's work any compensation which would be payable to them "if
the independent or sub-contractors were insured persons," the quoted
clause clearly implies that the insurer of the insured person is not liable
if the independent contractor or subcontractor is insured under the act.
[447–448]
Where a general contractor insured under the workmen's compensation
act, G. L. c. 152, let out part of his work to a subcontractor, also in-
sured under the act, who in turn let out part of the same work to a
second subcontractor, not insured under the act, the insurer of the
insured intermediate subcontractor was liable, and the insurer of the
general contractor was not liable, under § 18 of the act to pay com-
pensation payable by reason of injury and death of an employee of
the second, uninsured subcontractor while engaged in such work. [448–
449]
A conclusion by the Industrial Accident Board in a workmen's compensa-
tion case that under § 18 of the workmen's compensation act, G. L.
c. 152, the operator of a gravel pit was "an insured person" who
entered into an oral contract with an uninsured owner of a truck as an
"independent contractor" to do the pit operator's work was warranted
where it appeared that the pit operator contracted with an insured com-
pany constructing a road to provide fill at the construction site and con-
tracted with the truck owner for the use of the truck with a driver to
haul the fill to the site, and the board correctly found that the work of
the truck owner was "actually the means by which . . . [the pit opera-
tor] was fulfilling his own contract" with the construction company; an
assertion by the pit operator's insurer that the truck owner's work pur-
suant to the contract with the pit operator was "merely ancillary and
incidental to, and . . . no part of or process in, the . . . business car-
ried on by" the pit operator was without merit.   [449]
The Legislature, in enacting St. 1938, c. 102, amending G. L. c. 152, § 18,
by providing that the word "premises," as used in that section, shall
include "the public highways if the contract [between an insured per-
son and an independent contractor to do the insured's work] requires or
necessitates the use of the public highways," did not intend to exclude

from the scope of the word "premises" roads or ways other than public; and an employee of an independent contractor injured on any roadway may recover compensation under § 18 if the contract requires or necessitates use of such roadway and he is otherwise within that section. [450–451]

Evidence in a workmen's compensation case that a roadway into a gravel pit from a street was the only route by which gravel trucks could get to or from the pit warranted a finding by the Industrial Accident Board that a contract between the pit operator, insured under the act, and a truck owner, not insured under the act, for the use of the truck with a driver in hauling fill from the pit necessitated the use of the roadway; and as a matter of law a conclusion was required that within G. L. c. 152, § 18, as amended by St. 1938, c. 102, an injury to the driver arising from a collision of his truck and other trucks on the roadway occurred on "premises" on which the truck owner had undertaken to execute the work of the pit operator, even if the roadway was not a public way. [450, 451]

Although a purported marriage in New Hampshire between residents of Massachusetts intending to continue to reside here, four months after the man's former wife had obtained a decree absolute of divorce from him here, was initially void under G. L. c. 208, § 24; c. 207, § 10, conclusions that the woman party to the purported marriage entered into it in good faith and that it ultimately became valid under c. 207, § 6, were warranted by evidence that she was unaware that she could not marry the man here and believed that the expiration of six months from the decree nisi entitled them to marry and that a New Hampshire marriage would be valid anywhere, that they were married there to avoid notoriety and embarrassment from "local talk that she had not been married" during a period when she and the man had lived together before their marriage, and that after their marriage they lived here together as husband and wife until the man's death some twenty-two years later. [451–454]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Swift, J.*

*Charles F. Choate,* (*Philip Dexter* with him,) for Great American Indemnity Company.

*Francis X. Murphy,* for Lumbermens Mutual Casualty Company.

*William G. Burke,* for the claimants.

KIRK, J. This is an appeal by the Great American Indemnity Company from a decree awarding to the claimant widow dependency compensation for her own benefit and

for the benefit of her dependent children and ordering payment of certain other sums pursuant to G. L. c. 152. The claim arises from the death of Norman K. Van Bibber which occurred on February 4, 1957.

We summarize the facts. Early in 1957 the M. DeMatteo Construction Company, hereinafter called DeMatteo, under a contract with the Commonwealth of Massachusetts, was engaged in the construction of part of the Southeast Expressway in the vicinity of Neponset Circle. Under the contract DeMatteo was required, among other things, to provide borrow or fill for the roadbed. Because of the vast amount of fill required, DeMatteo, in addition to using its own trucks and gravel pits, contracted with others, including one Fredrikson, to provide fill at the construction site. Both DeMatteo and Fredrikson were insured under the workmen's compensation act.

Fredrikson worked a gravel pit on Weaver Road in Weymouth where a power shovel operated by Fredrikson's employee was used to load his own three trucks driven by his employees, and also to load other trucks whose owners were under contract with Fredrikson to deliver fill to the DeMatteo site. Of the latter trucks, one was owned by Oren Johnson, by whom Van Bibber had been employed as a truck driver for several years. Johnson was not insured under the workmen's compensation act.

The arrangement under which these trucks, including Johnson's, worked with Fredrikson was as follows: Having been loaded with fill at the pit by Fredrikson's power shovel, they proceeded to DeMatteo's construction site where the number of cubic yards on each truck was measured. If accepted, the load was dumped at a place designated by DeMatteo's representative and the driver was given a slip for the number of cubic yards delivered. DeMatteo paid Fredrikson at the rate of ninety cents per cubic yard of fill delivered. Fredrikson in turn paid the truck owners, under contract with him, including Johnson, at the rate of sixty-five cents per cubic yard, which covered pay for the driver and all other expenses including truck opera-

tion and maintenance. Fredrikson never prescribed the number of loads the latter trucks were to haul or the route to be taken to or from DeMatteo's construction site. For a few weeks before his death, Van Bibber, operating the truck owned by Johnson, had delivered fill from the pit to DeMatteo.

On February 2, 1957, two days before Van Bibber was killed, Johnson told Fredrikson that he was obliged to enter a hospital and asked that his truck, with Van Bibber as driver, be continued at work. Fredrikson agreed to use the truck at the usual rate of sixty-five cents per cubic yard for fill delivered, and to include Van Bibber's wages of $1.95 per hour in the amount which would be paid to Johnson after deducting the value of gas and oil furnished by Fredrikson.

On the morning of February 4, 1957, Van Bibber reported to the pit on Weaver Road in Weymouth, pumped gas into the Johnson truck, and proceeded down the hill leading to the pit. The truck slid and struck the rear of a truck owned and operated by one Milford whose arrangement with Fredrikson was similar to Johnson's. Milford's truck had already been loaded with fill in the pit and had been proceeding up the hill leading out of the pit when it began to skid. The truck turned around, headed toward the pit again and came to a stop. A few moments later it was struck in the rear by Van Bibber's sliding truck. Van Bibber got out to inspect the damage and, while he was standing between the two vehicles, a third truck slid down the hill, struck Van Bibber's truck and crushed Van Bibber to death between the Milford and Van Bibber trucks.

Two claims for compensation were before the board. One was against Lumbermens Mutual Casualty Company, the insurer of DeMatteo; the other was against Great American Indemnity Company, the insurer of Fredrikson. The claims were consolidated and heard by the single member whose findings and decision that Fredrikson's insurer, Great American Indemnity Company, was liable were affirmed and adopted by the reviewing board. The claim against DeMatteo's insurer was dismissed.

The findings and decision of the reviewing board are final and must be sustained unless lacking in evidential support or tainted by some error of law. *Hachadourian's Case,* 340 Mass. 81, 85, and cases cited.

The board found that at the time of the accident Van Bibber was an employee of Johnson and not of Fredrikson and that his fatal injury arose out of and in the course of that employment. These findings are supported by the evidence (see *Abbott* v. *Link-Belt Co.* 324 Mass. 673, 677; *Keaney's Case,* 341 Mass. 571) and the appellant does not dispute them.

The board predicated the liability of the appellant on G. L. c. 152, § 18.[1]

There is no question that both DeMatteo and Fredrikson are insured persons under c. 152, § 1 (6). The appellant contends, inter alia, that § 18 was erroneously applied by the board and advances three arguments in support of its contention which we now consider.

First, the appellant argues that the correct interpretation of § 18 requires that, as between DeMatteo and Fredrikson, the insurer of DeMatteo be held liable for the claimed compensation. We do not agree. We think that the express language, the legislative history and previous construction of § 18 by this court support the conclusion that compensation was properly sought from the insurer of Fredrikson. Section 18 states that under certain conditions ". . . the insurer shall pay to such employees any

---

[1] "If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons. . . . This section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured, nor to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured. The word 'premises,' as used in this section, shall include the public highways if the contract requires or necessitates the use of the public highways."

compensation which would be payable to them under this chapter *if the independent or sub-contractors were insured persons*" (emphasis added). The quoted clause indicates that the obligation of the insurer to pay compensation contemplates the absence of insurance on the part of the independent contractor or subcontractor. The clause clearly implies that the insurer of an "insured person" is not liable if the independent contractor or subcontractor is insured under the act. This negative implication is supported in the Report of the Massachusetts Commission on Compensation for Industrial Accidents (1912) page 52, where it was said: "The object of this section was to prevent the possibility of defeating the act by hiring an irresponsible contractor to carry on part of the employer's work." See *Cannon* v. *Crowley,* 318 Mass. 373, 375. Moreover, as was said, although in another context, in *Bindbeutel* v. *L. D. Willcutt & Sons Co.* 244 Mass. 195, 198: "It was the purpose of the workmen's compensation act to give all the workmen on a common job the benefit of the statute. It was not the purpose of the act to place a greater burden upon the general contractor than upon the subcontractors where all were insured. . . . With this end in view, § 17 [now § 18] was enacted, making the general contractor liable under the act to the employees of the subcontractor, *in case the latter did not insure his employees* as provided by the statute" (emphasis added).

Accordingly, we rule that where, as here, a general contractor (DeMatteo), insured under the act, lets out part or all of his work to a subcontractor (Fredrikson) who, in turn, lets out part or all of the same work to still another subcontractor (Johnson), the insurer of the general contractor (DeMatteo) is not liable under § 18 to pay compensation for an injury to an employee of the latter uninsured subcontractor (Johnson) if the intermediate subcontractor (Fredrikson) is insured under the act. This rule necessarily presupposes that compensation for the employee's injury is payable under § 18 from the insurance of the intermediate subcontractor. Stated otherwise, under this

rule the insurer of "an insured person," whether the insured person be termed a "general contractor," an "independent contractor" or a "sub-contractor," is relieved of liability to pay compensation under § 18 only if there is interposed between such "insured person" and the employee another "insured person" whose insurer is liable to pay compensation under some section of the act.

The board was right in determining that under § 18 Fredrikson is "an insured person" who entered into an oral contract "with an independent contractor [Johnson] to do such person's [Fredrikson's] work." See *Pimental* v. *John E. Cox Co. Inc.* 299 Mass. 579, 585. If, therefore, certain other requirements of § 18, next to be discussed, are met, the compensation sought by the claimant is payable by Fredrikson's insurer, the appellant, not by DeMatteo's insurer, under the rule set out above.

The appellant's second contention with respect to § 18, to the effect that Johnson's work pursuant to his contract with Fredrikson was "merely ancillary and incidental to, and . . . no part of or process in, the . . . business carried on by" Fredrikson, is without merit. Johnson, through his employee Van Bibber, was, as a practical matter, simply augmenting Fredrikson's own work force in delivering fill to DeMatteo's construction site. The board was clearly correct in finding that Johnson's work was "actually the means by which Fredrikson was fulfilling his own contract with DeMatteo." See, generally, *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 192–193, and cases cited.

The third argument of the appellant relative to § 18 is that the board was in error in finding that the place where Van Bibber's fatal injury occurred was on Fredrikson's premises, as that term is used in the statute.

Section 18 by its own terms does not apply "to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured. The word 'premises,' as used in this section, shall include the public highways if the

contract requires or necessitates the use of the public highways." The board found that Van Bibber's accident occurred "about 3/10ths of a mile in on Weaver Road from Pleasant Street and that said Weaver Road is a public way and that to get in and out of the pit it was necessary to use the said Weaver Road, and further, that to fulfill the terms of the contract it was necessary to use the public highways, and therefore the injury occurred on the 'premises' of Fredrikson." The evidence on this aspect of the case is as follows: Weaver Road runs in a westerly direction off Pleasant Street in East Weymouth to the pit where it ends; it is blacktopped to a certain point where it becomes a dirt road; the accident occurred on the dirt road where it runs down grade at a point three-tenths of a mile in from Pleasant Street and one-quarter of a mile from the pit; Weaver Road is the only route by which trucks could get to or from the pit.

While the specific subsidiary finding of the board that Weaver Road was a public way was not warranted by this evidence, we have no doubt that the ultimate finding, to the effect that the injury occurred on the premises "on which the contractor [Johnson] has undertaken to execute the work for the insured [Fredrikson]" was right. The last sentence of § 18 as it now reads was added by St. 1938, c. 102, following the decision in *Doherty's Case,* 294 Mass. 363. We do not pause to consider whether, and do not intimate that, the board would have been wrong if it had found, irrespective of St. 1938, c. 102, that the place of injury was on the premises on which Johnson had undertaken to execute the work of Fredrikson. We do say, however, that St. 1938, c. 102, leaves no doubt that the injury on Weaver Road occurred on such "premises." The 1938 amendment of the statute should be construed to effectuate its purpose which plainly was to enlarge rather than to restrict the meaning of the word "premises," and thus broaden the protection afforded to workmen under the act. In projecting the "premises" to "include the public highways if the contract [between the insured person and the

contractor] requires or necessitates the use of the public highways," the Legislature did not intend to exclude roads or ways other than public if the contract requires or necessitates the use of them. It would be quite unreasonable to impute to the Legislature an intent to require an injured employee to offer proof that his place of injury, if a road or way which the contract required him to use, was a public highway. To the contrary we think that under the proper construction of § 18, when an injury to an employee, otherwise compensable under § 18, occurs on a roadway, the only relevant consideration is whether the contract required or necessitated the use of such roadway.

Accordingly, we rule that the board, having found with evidence to support the finding that the contract between Fredrikson and Johnson necessitated the use of Weaver Road, was correct in making the further finding that the injury occurred, within the contemplation of § 18, on the premises on which Johnson had undertaken to execute the work of Fredrikson. Moreover, since the latter finding was based on adequate subsidiary findings supported by the evidence and was, as a matter of law, the only finding which could have been made on such subsidiary findings, it is not necessary for us to remand the case to the board because of the finding that Weaver Road was a public way. See *Cahill's Case,* 295 Mass. 538, 539; *Hamel's Case,* 333 Mass. 628. See also *Roney's Case,* 316 Mass. 732, 739.

The foregoing disposes of the contentions of the appellant with respect to § 18. We now consider the appellant's thesis that the claimant widow was never legally married to Van Bibber; that, in consequence, neither she nor their children under the age of eighteen years are entitled to the benefit of the conclusive presumption of dependency afforded by c. 152, § 32; and that since there was no other evidence of dependency in fact the board was not warranted in finding that the claimant was entitled to dependency compensation for herself and her children.

The record shows that more than thirty years ago the claimant, knowing that Van Bibber was already married,

lived with him in Boston as his wife and had two children by him. On October 6, 1933, in the Probate Court for Suffolk County Van Bibber's former wife was granted a decree of divorce nisi which became absolute April 6, 1934. On August 11, 1934, the claimant and Van Bibber, both residing in Massachusetts and intending to continue to reside here, were married in Portsmouth, New Hampshire, by a justice of the peace, and on the same day returned to Massachusetts where, so far as appears, they lived as husband and wife until Van Bibber's death in 1957. Three additional children were born to them.

The claimant testified that when she went to New Hampshire to be married she knew Van Bibber had been divorced but she did not know that she could not marry him in Massachusetts; that Van Bibber never told her that he could not be married in Massachusetts but did tell her that it would be perfectly all right to be married in New Hampshire; that she believed it was perfectly lawful and proper for them to be married in New Hampshire; that she felt that the marriage in New Hampshire would be good anywhere; that she thought the waiting period in Massachusetts was six months and not two years; that the reason they were married in New Hampshire was to avoid notoriety and embarrassment from the neighbors and "local talk that she had not been married all these years"; that "[e]verybody thought she had been married to Mr. Van Bibber; and she did not want it to get out."

The claimant does not dispute the fact that the New Hampshire marriage was a nullity in this Commonwealth. Under G. L. c. 208, § 24,[2] as amended by St. 1943, c. 168, § 1, Van Bibber was unable to remarry within two years from the date the divorce from his former wife became absolute. Since the claimant and Van Bibber resided in Massachusetts and intended to continue to reside here, their marriage in New Hampshire within the two year prohibition of G. L.

---

[2] "After a decree of divorce has become absolute, either party may marry again as if the other were dead, except that the party from whom the divorce was granted shall not marry within two years after the decree has become absolute if the other party is living."

c. 208, § 24, was void under G. L. c. 207, § 10.[3] *Davis* v. *Seller,* 329 Mass. 385. *Fraser* v. *Fraser,* 336 Mass. 597, 600. See *Levanosky* v. *Levanosky,* 311 Mass. 638, 641. It is provided, however, by G. L. c. 207, § 6, that "If a person, during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract with due legal ceremony and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, that the former marriage had been annulled by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to the former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment, and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents."

By reason of the provisions of G. L. c. 208, § 24,[4] the marriage between Van Bibber and his former wife was still "in force" within the meaning of G. L. c. 207, § 6, and continued "in force" until April 6, 1936. *Vital* v. *Vital,* 319 Mass. 185, 189. See *Fraser* v. *Fraser,* 336 Mass. 597, 600.

The board found that the claimant entered into the marriage in good faith and that the marriage became valid April 6, 1936. We think the finding with regard to good faith is supported by the evidence and that the conclusion as to the validity of the marriage is correct.

The claimant's testimony that she knew Van Bibber had been divorced, her belief that the waiting period was six

---

[3] "If any person residing and intending to continue to reside in this commonwealth is disabled or prohibited from contracting marriage under the laws of this commonwealth and goes into another jurisdiction and there contracts a marriage prohibited and declared void by the laws of this commonwealth, such marriage shall be null and void for all purposes in this commonwealth with the same effect as though such prohibited marriage had been entered into in this commonwealth."

[4] *Supra,* note 2.

months (which the board could find she believed related to October 6, 1933, the date of the decree nisi), her unawareness that she could not marry him in Massachusetts, her information and belief that a New Hampshire marriage was legal and would be valid anywhere, and her testimony that her purpose in going to New Hampshire was to avoid local gossip amply support the board's finding on the issue of good faith, and bring the case within the saving provision of G. L. c. 207, § 6. The case of *Vital* v. *Vital,* 319 Mass. 185, controls the case as to the applicability of c. 207, § 6, even though the marriage was contracted in a foreign State and was thereby void under c. 207, § 10. Compare *Fraser* v. *Fraser,* 334 Mass. 4. Inasmuch as the claimant and Van Bibber continued to live together as husband and wife with good faith on her part after the impediment to their marriage had been removed on April 6, 1936, they are to be held legally married from that date and their children by the marriage are to be held legitimate. G. L. c. 207, § 6. It follows that the claimant and her children are entitled to the benefit of the conclusive presumption of dependency under G. L. c. 152, § 32.

The final decree is affirmed, and costs and reasonable expenses under G. L. c. 152, § 11A, inserted by St. 1945, c. 444, as amended, shall be allowed by the single justice.

*So ordered.*